**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

AMS E. BAKER, SR.,

                                        Plaintiff,                    5:18-cv-00870 (BKS/ATB)

v.

MEDICAL ANSWERING SERVICES, LLC,

                                        Defendant.

---

**Appearances:**

Ams E. Baker, Sr.
117 Dablon Ct.
Syracuse, NY 13202
*Plaintiff pro se*

Subhash Viswanathan
Bond Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
*For Defendant*

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Ams E. Baker, Sr., brings this action under Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), alleging that Defendant Medical Answering

Services, LLC discriminated against him because of his race. (Dkt. No. 1, at 2). The complaint

alleges that Defendant terminated Plaintiff's employment and subjected him to unequal terms

and conditions of employment based on race. (*Id.*). Plaintiff seeks compensatory and punitive

damages, as well as costs and attorney's fees. (*Id.* at 5). On October 9, 2018, Defendant moved

to dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for

failure to allege an adverse employment action and failure to allege facts supporting a plausible inference of race discrimination. (Dkt. No. 15-6). Despite receiving an extension of time to respond to Defendant's motion, (*see* Dkt. No. 17), Plaintiff has not done so.[1] For the reasons discussed below, Defendant's motion is granted.

## II.    BACKGROUND[2]

Plaintiff was an employee of Defendant Medical Answering Services in Syracuse, New York. (Dkt. No. 1, at 1). On the morning of September 29, 2017, Plaintiff's colleague, Jessica Morgan,[3] "was on the edge" and "came to work to harass" Plaintiff. (Dkt. No. 1-2, at 1). Plaintiff "felt like a target." (*Id.*). Interrupting his work, (*id.*), she approached Plaintiff and accused him of "not using the proper greeting during a phone call," (Dkt. No. 1, at 3). Plaintiff had used the greeting "hello this is Ams are you calling to schedule or cancel a trip or is there something other I can assist you with." (Dkt. No. 1, at 3). Morgan told Plaintiff he could not use the word "something other" in the greeting, even though he had previously done so "for multiple phone calls" without being reprimanded. (*Id.* at 4). Morgan never indicated if she approached Plaintiff because of "coaching" or if it was another "type of approach." (Dkt. No. 1-2, at 1). During this interaction, however, Morgan told Plaintiff that "maybe I approached you wrongfully." (*Id.* at 1). She asked him "to meet in a room to discuss [the] matter," but "[t]he room ended up being the Human Resources office." (*Id.* at 1–2). In the office, with human resources representatives

---

[1] The order extending Plaintiff's response deadline, which was mailed to Plaintiff's last known address, was returned to the Court as undeliverable. (Dkt. Nos. 17, 18). In this District, all litigants have an ongoing obligation to keep their address information updated with both the Court and adversaries. L.R. 10.1(c)(2). A party's failure to do so is grounds for dismissal. L.R. 41.2(b); *see Dansby v. Albany Cnty. Corr. Facility Staff*, No. 95-cv-1525, 1996 WL 172699, at *1, 1996 U.S. Dist. LEXIS 4782, at *2 (N.D.N.Y. Apr. 10, 1996); *Rivera v. Goord*, No. 97-cv-308, 1999 WL 33117155, at *1, 1999 U.S. Dist. LEXIS 21922, at *1–2 (N.D.N.Y. Sept. 14, 1999). Accordingly, Plaintiff is advised that failure to keep his address information updated may result in dismissal of this action.

[2] All facts, which are taken from the complaint and exhibits attached thereto, are assumed to be true for purposes of this motion. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] It is not clear from the complaint what position Morgan held at Medical Answering Services.

present, Morgan stated that Plaintiff had "to go home for the day." (*Id.* at 2). Plaintiff was "sent home for the rest of the day" and "was unable to return to work due to false allegations." (Dkt. No. 1, at 3). The day that Plaintiff was sent home, Morgan "never corresponded [sic] my behavi[or] with me," but "[n]ow" she accused him of "job insubordination and misconduct." (Dkt. No. 1-2, at 2). Plaintiff was also accused of "not providing proper paperwork for [a] doctor's appointment." (Dkt. No. 1, at 3).

## III.   STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555).[4] A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, a court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A complaint that has been filed pro se "must be construed liberally with

---

[4] Copies of the unpublished cases cited in this decision will be mailed to Plaintiff because of his pro se status.

'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id*.

## IV.    DISCUSSION

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A discrimination claim under Title VII is "subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). As this motion is one to dismiss, the Court "focus[es] only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation." *Id*. To defeat a motion to dismiss "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). The plaintiff may meet the burden of showing a motivating factor "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*. A complaint is sufficient "if it pleads specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia University*, 831 F.3d 46, 56 (2d Cir. 2016).

Defendant asserts that Plaintiff has failed to allege an adverse employment action and has not plausibly alleged facts from which a discriminatory motivation might be inferred. (Dkt. No. 15-6). Liberally construed in light of Plaintiff's pro se status, however, the complaint

plausibly alleges employment termination. Plaintiff alleges that he was told to leave on September 29, 2017 and "was unable to return to work." (Dkt. No. 1, at 4; Dkt. No. 1-2, at 2). In the form complaint, Plaintiff checked the box "termination of employment" when asked what "the conduct complained of in this action involves." (Dkt. No. 1, at 2). Employment termination is an adverse employment action. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Accordingly, Plaintiff has alleged facts plausibly indicating that he suffered an adverse employment action cognizable under Title VII.[5]

Plaintiff has, however, failed to plausibly allege circumstances giving rise to an inference of discrimination. The complaint is devoid of any facts that directly evidence discriminatory intent or any facts from which discriminatory intent could be plausibly inferred. Although Plaintiff claims that he "felt like a target" and that Morgan "came to work to harass" him, he has not alleged facts plausibly supporting a connection between Morgan's actions and Plaintiff's race. (Dkt. No. 1-2, at 1). *See Arroyo-Horne v. City of New York*, No. 16-cv-03857, 2018 WL 4259866, at *15, 2018 U.S. Dist. LEXIS 151183, at *37 (E.D.N.Y. Sep. 5, 2018) (dismissing a claim where "Plaintiff fails to allege facts to support her claim that either alleged adverse employment action was discriminatory based on her race"). While an inference of discrimination may be drawn from a showing of disparate treatment—evidence that the Plaintiff was treated less favorably than similarly situated employees of different races—there are no such facts alleged here. *See Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Therefore, the complaint must be dismissed because Plaintiff has failed to allege any facts plausibly giving rise to an inference of discrimination. *See Vega*, 801 F.3d at 84.[6]

---

[5] Defendant argues that Morgan's verbal counseling of Plaintiff was not an adverse employment action, (Dkt. No. 15-6, at 6–7), but it is unnecessary for this Court to determine that issue.

[6] Attached to the complaint is an "Incident Documentation Form" completed by Plaintiff stating that he has a "hostile work environment," (Dkt. No. 1-3, at 12), but nothing in the complaint indicates Plaintiff's desire to

## V.       LEAVE TO AMEND

Defendant seeks dismissal of the complaint with prejudice. (Dkt. No. 15-6, at 9). In general, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also* Fed. R. Civ. P. 15 (a) (2) ("The court should freely give leave when justice so requires."). Further, district courts should frequently provide leave to amend before dismissing a pro se complaint if amendment would not be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, because the Court cannot say that any amendment of the complaint would necessarily be futile, Plaintiff is granted leave to amend.

In any amended complaint, Plaintiff must clearly set forth the facts that give rise to his discrimination claim, including the dates, times, and places of the alleged underlying acts, and identifying each individual who committed each alleged wrongful act. Any such amended complaint will replace the existing complaint; it must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

## VI.      CONCLUSION

For these reasons, it is hereby

---

advance such a claim, (see Dkt. No. 1). And there are no facts supporting any such claim. *See Littlejohn*, 795 F.3d at 320–21 ("To establish a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))).

**ORDERED**, that Defendants' motion to dismiss (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED**, that the complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action, he must file an **amended complaint within THIRTY (30) days** from the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that if Plaintiff fails to file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is dismissed without prejudice for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that the Clerk of Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules along with copies of the unpublished decisions cited herein.

**IT IS SO ORDERED.**

Dated: February 14, 2019
          Syracuse, New York

Brenda K. Sannes
U.S. District Judge

Dansby v. Albany County Correctional Facility Staff, Not Reported in F.Supp. (1996)

1996 WL 172699
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin DANSBY, Plaintiff,
v.
ALBANY COUNTY CORRECTIONAL FACILITY
STAFF, Defendant.

No. 95-CV-1525 (RSP/RWS).
|
April 10, 1996.

**Attorneys and Law Firms**

Kevin Dansby pro se.

*ORDER*

POOLER, District Judge.

**\*1** In an order and report-recommendation dated
December 8, 1995, Magistrate Judge Smith noted that
Dansby had not signed the complaint he filed to
commence this action. Magistrate Judge Smith directed
Dansby to submit an affidavit which contained all of the
representations delineated in Fed.R.Civ.P. 11(b) with
respect to his complaint. The magistrate judge
recommended dismissal of Dansby's action if Dansby
failed to comply with the terms of the
report-recommendation within forty-five (45) days from
the date of the service.

On December 12, 1995, a copy of the
report-recommendation was served on Dansby by regular
mail to his last known address, the Albany County Jail.
On December 22, 1995, the jail returned the
report-recommendation marked "Return to Sender -- No
Forwarding Order on File."

Rule 41(b) of the Federal Rules of Civil Procedure
provides that a court may, in its discretion, dismiss an
action based upon the failure of a plaintiff to prosecute an
action or comply with any order of the court. *Link v.
Wabash R.R. Co.,* 370 U.S. 626, 629 (1962). The district

court may exercise its discretion to dismiss when
necessary to achieve orderly and expeditious disposition
of cases. *See Rodriguez v. Walsh,* 1994 W.L. 9688, at *1
(S.D.N.Y. 1994).

Moreover, a plaintiff has the duty to inform the Court of
any address changes. As the Fifth Circuit has stated:

> It is neither feasible nor legally
> required that the clerks of the
> district courts undertake
> independently to maintain current
> addresses on all parties to pending
> actions. It is incumbent upon
> litigants to inform the clerk of
> address changes, for it is manifest
> that communications between the
> clerk and the parties or their
> counsel will be conducted
> principally by mail. In addition to
> keeping the clerk informed of any
> change of address, parties are
> obliged to make timely status
> inquiries. Address changes
> normally would be reflected by
> those inquiries if made in writing.

*Perkins v. King,* No. 84-3310, slip op. at 4 (5th Cir. May
19, 1985) (citing *Williams v. New Orleans Public Service,
Inc.,* 728 F.2d 730 (5th Cir. 1984); *Wilson v. Atwood
Group,* 725 F.2d 255 (5th Cir. 1984) (en banc)); *see
Wehlen v. Foti et al.,* 1987 W.L. 8039, at *1-2 (E.D.La.
1987); *see generally* Rule 41.2(b) of the Local Rules of
Practice for the Northern District of New York.

This matter cannot proceed without Dansby filing the
affidavit described above or notifying the court of his
current address. Therefore, it is hereby

ORDERED, that this action is dismissed. *See* Rules
5.4(b)(4) and 41.2(b) of the Local Rules of Practice for
the Northern District of New York, and it is further

ORDERED, that the Clerk serve a copy of this Order on
the plaintiff by regular mail at his last known address.

IT IS SO ORDERED.

**All Citations**

**Dansby v. Albany County Correctional Facility Staff, Not Reported in F.Supp. (1996)**

Not Reported in F.Supp., 1996 WL 172699

**End of Document**                                            © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4259866
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Monica ARROYO-HORNE, Plaintiff,
v.
CITY OF NEW YORK, Defendant.

16-CV-03857 (MKB)
|
Signed 09/05/2018

**Attorneys and Law Firms**

Monica Arroyo-Horne, Brooklyn, NY, pro se.

Amanda Blair, New York City Law Department Office of
the Corporation Counsel, New York, NY, for Defendant.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge

**\*1** Plaintiff Monica Arroyo-Horne, proceeding *pro se*,
commenced the above-captioned action on July 7, 2016,
against Defendants the New York City Police Department
(the "NYPD"), and individual Defendants Robin
Goodman, Norman Grandstaff, Monique Morgan, Diane
Harnach, Dave Holloway, Al Jernigan, and Jean Jason.[1]
(Compl., Docket Entry No. 1.) Plaintiff filed an Amended
Complaint on March 10, 2017, against Defendant City of
New York asserting claims of racial discrimination,
retaliation, and hostile work environment in violation of
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
2000e *et seq.* ("Title VII"), (Am. Compl. ¶¶ 12–27,
Docket Entry No. 14), interference and retaliation in
violation of the Family Medical Leave Act, 29 USC §
2601 *et seq.* ("FMLA"), (*id.* ¶¶ 28–48), and a claim of
municipal liability pursuant to 42 U.S.C. § 1983, (*id.* ¶¶
51–52). Plaintiff seeks compensatory and punitive
damages, costs, and injunctive relief. (*Id.* ¶ 53.)

[1]     On December 9, 2016, the Court dismissed with
        prejudice Plaintiff's FMLA and Title VII claims against
        the individual Defendants and the NYPD and granted
        Plaintiff leave to file an Amended Complaint asserting
        FMLA and Title VII claims against the City of New

York. *Arroyo-Horne v. New York City Police Dep't*,
No. 16-CV-03857, 2016 WL 8711061, at \*13
(E.D.N.Y. Dec 9, 2016).

Defendant moves to dismiss the Amended Complaint
pursuant to Rule 12(b) of the Federal Rules of Civil
Procedure for failure to exhaust administrative remedies
and to state a claim upon which relief may be granted.
(Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No.
23; Def. Mem. in Supp. of Def. Mot. ("Def. Mem."),
Docket Entry No. 24.) For the reasons set forth below, the
Court grants Defendant's motion and dismisses the
Amended Complaint, but grants Plaintiff leave to file a
second amended complaint within thirty (30) days of this
Memorandum and Order.

**I. Background**
The Court assumes the truth of the factual allegations in
the Amended Complaint for the purposes of this
Memorandum and Order. Because Plaintiff is proceeding
*pro se*, the Court also considers and assumes the truth of
Plaintiff's opposition papers and the subsequent letter[2]
submitted in support of the Amended Complaint.[3]

[2]     On May 30, 2018, Plaintiff filed a letter with the Court
        alleging that in April of 2018, she was overlooked for a
        promotion within the 69th Precinct "out of retaliation."
        (Pl. Letter dated May 30, 2018.) Because this recent
        event post-dates Plaintiff's prior complaints with the
        Equal Employment Opportunity Commission
        ("EEOC"), and therefore could not have been included
        within them, this claim is unexhausted. *See Hewitt v.
        N.Y.C. Dep't of Health & Mental Hygiene*, 535 F.
        App'x 44, 45 (2d Cir. 2013) (affirming district court
        finding that plaintiff "failed to administratively exhaust
        her Title VII retaliation claim by failing to include that
        claim in her administrative complaint"). Plaintiff must
        exhaust her administrative remedies as to this claim
        before seeking relief in court.

[3]     *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir.
        2013) ("A district court deciding a motion to dismiss
        may consider factual allegations made by a *pro se* party
        in his papers opposing the motion."); *see also Trisvan
        v. Heyman*, 305 F. Supp. 3d 381, 389 (E.D.N.Y. Mar.
        30, 2018) (same); *Waters v. Douglas*, No. 12-CV-1910,
        2012 WL 5834919, at \*2 (S.D.N.Y. Nov. 14, 2012)
        ("[I]n light of the plaintiff's *pro se* status, the Court has
        considered all of plaintiff's submissions, drawing every

reasonable inference in his favor.").

**\*2** Plaintiff, who identifies as "Afroamerican," is employed by the NYPD as a Police Administrative Aide ("PAA") at the 69th Precinct in Brooklyn, New York. (Am. Compl. ¶¶ 7–12.) The NYPD appointed Plaintiff as a PAA on or about March 13, 2000, and transferred her to the 69th Precinct on October 1, 2009. (*Id.* ¶ 12.) Since February of 2011, Plaintiff has been working under Principal Administrative Aide ("PRAA") Robin Goodman and Senior Police Administrative Aide Al Jernigan ("SPAA"). (*Id.* ¶ 16.) More recently, another SPAA, Jean Jason, has also been supervising Plaintiff. (*Id.* ¶ 50.)

### a. Complaints about Plaintiff's co-worker

Plaintiff made several complaints on unspecified dates to PRAA Goodman about her co-worker PAA Monique Morgan. According to Plaintiff, Morgan threatened her, incited arguments, and failed to do her assigned work, which often caused Plaintiff to have to complete Morgan's work in addition to her own work. (*Id.* ¶¶ 16–19.) Morgan spent time speaking with Goodman instead of completing her work. (*Id.* ¶ 16.) On July 1, 2014, Morgan "began yelling" at Plaintiff, telling her "to take a Domestic Incident Report." (*Id.* ¶ 18.) Plaintiff reported this incident to Goodman, but Goodman did not discipline Morgan and instead changed Morgan's work assignment. (*Id.* ¶ 19.) Morgan was reassigned to the "Roll Call office" but still worked the same hours as Plaintiff. (*Id.*)

On November 1, 2014, Captain Norman Grandstaff changed Plaintiff's schedule to prevent her from having to work with Morgan. Although Grandstaff threatened to make Plaintiff come into work at 4:00 AM, he ultimately changed Plaintiff's schedule to 6:30 AM to 2:30 PM, Sunday through Thursday. (*Id.* ¶ 17.) Plaintiff alleges that her superiors altered her schedule in retaliation for her complaints regarding Morgan. (*Id.*) Because of the schedule change, Plaintiff had to arrange a caretaker for her mother and walk through her "high-crime" neighborhood during the dark early morning hours. (*Id.*) However, the change in schedule did not prevent Morgan from being in the building at the same time as Plaintiff. (*Id.*)

### b. Denial of transfer requests and overtime assignments and compensation

On unspecified dates between October 1, 2009 and March 8, 2017, while employed at the 69th Precinct, Plaintiff made several transfer requests and requests to be considered for available positions for which she was qualified. (*Id.* ¶¶ 13, 42.) Plaintiff's superiors did not select Plaintiff for positions available in the Domestic Violence Unit, Administrative Lieutenants Office, and Payroll Department. (*Id.*; Pl. Opp'n to Def. Mot. ("Pl. Opp'n") 2, Docket Entry No. 30.) The positions in the Domestic Violence Unit and Administrative Lieutenants Office "offered objectively preferred benefits such as flex time," which would have afforded Plaintiff more flexibility to enable her to take care of her mother. (Am. Compl. ¶¶ 13, 42.) The position in the Payroll Department offered an increase in salary. (Pl. Opp'n 2.) Plaintiff does not allege who received the positions in the Domestic Violence Unit or Payroll Department, but PAA Xiao Hung, who is of Asian descent, received the position in the Administrative Lieutenants Office. (Am. Compl. ¶¶ 13, 42.)

Throughout her time at the 69th Precinct, Plaintiff's applications for overtime to "cover her FMLA," were denied while other PAAs were allowed overtime. (*Id.* ¶¶ 23–24.) "[O]n several occasion[s]," Plaintiff's requests for overtime compensation were denied even though she had worked beyond her scheduled hours. (*Id.* ¶ 24.) Plaintiff was told that she could not perform overtime in her "immediate assigned work office" but she observed co-workers working overtime in their "immediate assigned office(s)." (*Id.*)

### c. EEOC charges

**\*3** On November 1, 2014, the day Plaintiff's schedule was changed, Plaintiff filed a charge of discrimination with the EEOC alleging "among other things, that the denial of her requests for transfer of assignment constituted retaliation and discrimination based on her doctor[']s evaluation of her psychological and physical disability history."[4] (*Id.* ¶ 14.)

4    Plaintiff is not asserting a disability claim in this action.

Arroyo-Horne v. City of New York, Slip Copy (2018)

Plaintiff also filed charges with the EEOC on March 4, 2016 and September 9, 2016, and received right-to-sue letters on April 8, 2016 and April 20, 2017, respectively.[5] (Mem. in Opp'n to Defs. Mot. 1–2 ("Pl. Opp'n"), Docket Entry No. 30.) Plaintiff's March 4, 2016 EEOC complaint "charg[ed] NYPD, New York City, Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983." (Id.) Plaintiff does not specify the claims in the September 9, 2016 EEOC charge.

[5]    Plaintiff characterizes the April 20, 2017 correspondence as a "response" to her September 9, 2016 charge. (Pl. Mem. in Opp'n to Defs. Mot. ("Pl. Opp'n") 1–2, Docket Entry No. 30.) The Court construes the "response" to be referencing a right-to-sue letter.

### d. Disciplinary actions taken against Plaintiff

On May 6, 2015, Plaintiff asked SPAA Jernigan for a form to request time off from work on Mother's Day, Sunday, May 10, 2015. (Id. ¶ 21.) Jernigan gave Plaintiff the required "tour change request" form and told Plaintiff that he did not see any reason why Plaintiff's change of schedule would affect the "work flow" because there was a "full staff." (Id.) Plaintiff completed and submitted the form but Jernigan returned the form to Plaintiff requesting that she note that she would work on May 8, 2015 in lieu of May 10, 2015.[6] (Id.) Plaintiff made these changes and returned it to another supervisor. (Id.)

[6]    Plaintiff states in the Amended Complaint that the form "was returned to change the schedule date to do 'in lieu of' May 8, 2015." (Am. Compl. ¶ 21, Docket Entry No. 14.) Although unclear, the Court understands Plaintiff to be asserting that she was asked to work on May 8 to make up the hours she would be missing for her absence on Mother's Day.

On May 18, 2015, Sergeant Quigg informed Plaintiff that she would receive four command disciplines from Grandstaff for: (1) removing a locker from her immediate work office, (2) remaining on the premises of the Precinct after the end of her scheduled tour, (3) defacing city property, and (4) being absent from work on Mother's Day. (Id. ¶ 20.) Plaintiff alleges that the reprimands were unfounded and motivated by her race and by retaliation.

(Id.) According to Plaintiff, she never removed a locker from her office, was often delayed leaving work because of work related reasons, adhered to the 69th Precinct's custom of labeling office equipment, and received advance verbal approval for her absence on Mother's Day. (Id.)

At an unspecified time while assigned to the 69th Precinct, SPAA Jason also issued command disciplines to Plaintiff and recommended that she lose vacation days for "allegedly failing to type a complaint." (Id. ¶ 50.) Jason, who Plaintiff alleges is "Caribbean," did not "give the command disciplines to the PAA[s] responsible for the delay in inputting the complaint because of their race (Caucasian)." (Id.) Plaintiff also alleges that Jason has overlooked mistakes made by other employees. (Id.)

### e. NYSDHR charges

**\*4** Plaintiff filed a charge with the New York State Division of Human Rights ("NYSDHR") on April 23, 2003, alleging that she had been transferred in retaliation for a previous charge of discrimination.[7] (Am. Compl. ¶ 12.) On July 7, 2016, Plaintiff filed a second charge with the NYSDHR alleging age and race discrimination, harassment, and retaliation by the 69th Precinct for having previously filed NYSDHR charges while assigned to the 69th Precinct. (Id. ¶ 10.) In the July 7, 2016 charge, Plaintiff asserted that an unnamed supervisor "showed favoritism towards a co-worker," someone with whom Plaintiff had "personal disputes." (Id.)

[7]    The Court does not understand Plaintiff to be relying on this charge in support of her claims. In any event, any claim relying on the April 23, 2003 charge would be time-barred because Plaintiff has not alleged that she filed the charge with the EEOC within 300 days of the unlawful conduct she alleges, as required by Title VII. 42 U.S.C. § 2000e-5(e)(1); see Perez v. Harbor Freight Tools, 698 F. App'x 627, 628 (2d Cir. 2017).

### f. FMLA leave

In December of 2014, Plaintiff submitted a FMLA application requesting leave to care for her mother who suffers from Alzheimer's Disease and had previously

suffered a stroke. (*Id.* ¶ 28.) Goodman, aware of Plaintiff's hardship, informed Plaintiff that the application had been lost and needed to be resubmitted. (*Id.* ¶ 29.) Plaintiff does not indicate whether she resubmitted the application. (*Id.*)

In April of 2016, Plaintiff learned that SPAA Winifred Cudjoe called the FMLA Unit with questions concerning Plaintiff's prior FMLA application. (*Id.* ¶ 30.)

On May 2, 2016, Plaintiff submitted another FMLA application requesting leave, but the 69th Precinct returned the application because Plaintiff's doctor failed to correctly complete the document. (*Id.* ¶ 43.) On May 4, 2016, Plaintiff resubmitted the application. (*Id.* ¶ 44.) Plaintiff contacted the FMLA Unit and Sergeant Shantel[8] informed her that the application had been completed correctly and that Plaintiff "could have FMLA." (*Id.*) Shantel also "expressed that when submitting documentation requesting FMLA you are temporarily approved until further notice." (*Id.*)

[8]    Plaintiff does not provide Sergeant Shantel's first name.

On October 3, 2016, Plaintiff requested FMLA leave for a fractured left foot. (*Id.* ¶ 37.) In a meeting on October 27, 2016, PRAA Benton and Administrative Lieutenant McNeil[9] informed Plaintiff that she could no longer use FMLA leave "intermittently." (*Id.* ¶ 31.) McNeil told Plaintiff that instead of FMLA leave, she should use leave request form "28." (*Id.*)

[9]    Plaintiff does not provide Administrative Lieutenant McNeil's first name.

On December 2, 2016, Benton informed Plaintiff that she would have to resubmit her FMLA application. (*Id.* ¶ 32.) On January 24, 2017, McNeil informed Plaintiff "that she is no longer eligible for FMLA." (*Id.* ¶ 33.) That same day, Plaintiff submitted an "inner office memo" to McNeil regarding their earlier conversation about Plaintiff's FMLA eligibility. (*Id.* ¶ 34.) McNeil informed Plaintiff of a meeting scheduled with the FMLA Unit and told her that she "should bring representation" to the meeting. (*Id.*)

On February 2, 2017, Plaintiff met with Benton to discuss her FMLA application to care for her mother as well as for her own medical needs. (*Id.* ¶¶ 35–37.) McNeil verbally told Plaintiff that she was ineligible for FMLA leave and would have to contact the FMLA Unit to receive that information in writing. (*Id.*) Plaintiff thereafter submitted an "inner office memo" to Benton

requesting an official denial of her FMLA leave request. (*Id.* ¶ 37.) Plaintiff's superiors informed her that the denial would come from the "FMLA Unit at Headquarters." (*Id.* ¶ 38.) As of March 10, 2017, the date of the filing of the Amended Complaint, Plaintiff had not received a formal denial of her leave. (*Id.*)

**\*5** On February 9, 2017, Plaintiff requested FMLA leave to avoid having to travel with the "CAM Boot" she wore to support her fractured foot during dangerous snowstorm conditions. (*Id.* ¶ 40.) The 69th Precinct denied Plaintiff's request and, although the NYPD dispatched a police car to transport her to work, Plaintiff nevertheless arrived late to work. (*Id.*) Plaintiff believes the Precinct counted her late and deducted time from her pay as a result. (*Id.*)

On February 27, 2017, Plaintiff's health benefits were cancelled by someone in the payroll department, as a result of which she was forced to cancel a scheduled doctor's appointment. (*Id.* ¶ 39.)

Plaintiff alleges the conduct surrounding her FMLA application(s) and health benefits constitute " 'interference and retaliation' with her rights under the [FMLA] Act." (*Id.* ¶¶ 38, 39.)

### g. Other alleged discriminatory and harassing conduct

On or about May 28, 2015, Plaintiff submitted a "Reasonable Accommodation Request" to Goodman but Goodman never responded.[10] (*Id.* ¶ 46.)

[10]    Plaintiff does not indicate what accommodation she sought. (Am. Compl. ¶ 46.)

In November of 2015, Plaintiff complained to the "proper supervisors" about being subjected to "verbal abuse by a coworker who provoked a verbal argument with Plaintiff because of her race." (Pl. Opp'n 3.) As a result of this complaint, Plaintiff alleges that she was subjected to disparate treatment and "was retaliated by supervisors with Command Disciplines and Complaints." (*Id.*)

On February 4, 2016, an argument occurred between Plaintiff and co-worker PAA Diane Harnach concerning music in their shared workspace. (*Id.* ¶ 48.) PAA Harnach told Plaintiff that she does not like to listen to music while working and turned off the radio. (*Id.*) Because of this incident, Plaintiff "no longer has music in that office to listen to while she work[s]." (*Id.* ¶¶ 48–49.)

While employed at the 69th Precinct, on an unknown date, Administrative Lieutenant Holloway[11] gave Plaintiff a new chair because of Plaintiff's "back problems." (Am. Compl. ¶ 26.) Soon after, an unspecified person removed the chair from Plaintiff's workstation — causing her to stand "to perform her office duties" — and gave the chair to another employee who is of Asian descent.[12] (*Id.*) Plaintiff believes these person(s) gave the chair to her co-worker "out of retaliation, harassment and discrimination." (*Id.*)

[11]    Plaintiff does not provide Administrative Lieutenant Holloway's first name.

[12]    Plaintiff does not indicate how long she was without a chair. (Am. Compl. ¶ 26.)

On an unknown date described by Plaintiff as "the hottest day," SPAA Jason allegedly removed a fan from Plaintiff's work area, leaving her in "a room with no air." (*Id.* ¶ 50.) Plaintiff also alleges that Jason "harass[es]" her, but does not specify the nature of the harassment. (*Id.*)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) ). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal, 556*

U.S. 662, 678 (2009) ). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

**\*6** In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Title VII claims

Plaintiff asserts Title VII claims for discrimination, retaliation, and hostile work environment. (*See generally* Am. Compl.) Plaintiff filed a charge with the EEOC on November 1, 2014. Plaintiff also filed charges with the EEOC on March 4, 2016 and September 9, 2016, and received right-to-sue letters on April 8, 2016 and April 20, 2017, respectively. (Pl. Opp'n 1–2.) Plaintiff does not specify the claims in the November 1, 2014 EEOC charge but states that the March 4, 2016 and September 9, 2016 EEOC filings "charg[ed] NYPD, New York City, Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983." (*Id.*)

Defendant argues that (1) Plaintiff failed to exhaust her administrative remedies; (2) her claims are time-barred; and (3) she fails to state a claim. (*See generally* Def. Mem.; Def. Reply in Supp. of Def. Mot. 2 ("Def. Reply Mem.") 2, Docket Entry No. 27.)

### i. Timeliness of Plaintiff's claims based on the EEOC charge

Defendant argues that Plaintiff's November 1, 2014 charge is not actionable because "plaintiffs have ninety days after issuance of the right-to-sue letter to file a lawsuit in federal court."[13] (Def. Mem. 11.)

[13]    Defendant does not make any arguments with respect to whether Plaintiff's other EEOC charges meet the

Arroyo-Horne v. City of New York, Slip Copy (2018)

ninety-day filing requirement. Although it appears that Plaintiff's March 4, 2016 EEOC charge, for which she received a right to sue letter on April 8, 2016, would also be time-barred under the ninety-day rule, the Court only evaluates for timeliness claims based on Plaintiff's November 1, 2014 charge.

A plaintiff bringing Title VII claims must file a complaint not more than ninety days after receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Dawes v. City Univ. of New York*, 193 F. App'x 59, 60 (2d Cir. 2006) ("A Title VII claimant must file his complaint not more than [ninety] days after receipt of a right-to-sue letter from the EEOC." (citing *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994) ) ); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) ("In order to be timely, a claim under Title VII ... must be filed within [ninety] days of the claimant's receipt of a right-to-sue letter."). "Equitable tolling is appropriate where the plaintiff: (1) actively pursued judicial remedies but filed a defective pleading during the specified time period; (2) was unaware of his or her cause of action due to misleading conduct of the defendant; or (3) suffered from a medical condition or mental impairment [that] prevented her from proceeding in a timely fashion." *Grys v. ERIndustrial Sales, Inc.*, 553 F. App'x 61, 62 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) ).

Because Plaintiff does not allege whether and when she received a right-to-sue letter for the November 1, 2014 EEOC charge, the Court cannot adjudicate whether Plaintiff has timely filed the related Title VII claims in the Amended Complaint.[14]

[14]    Moreover, as Defendant notes, because Plaintiff does not allege that she received a right-to-sue letter in response to the filing of the November 1, 2014 charge, any claims based on this charge are unexhausted. *See Hewitt*, 535 F. App'x at 45 (holding that a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a notice of right-to-sue); *Canty v. Wackenhut Corr. Corp.*, 255 F. Supp. 2d 113, 117 (E.D.N.Y. 2003) ("Because [the plaintiff] has given no indication that she has obtained or even attempted to procure a right-to-sue letter, she has therefore failed to comply with the procedural requirements for filing a Title VII discrimination claim.").

### ii. Exhaustion of administrative remedies

*7 Defendant argues that Plaintiff failed to exhaust her administrative remedies with respect to the claims based on the September 9, 2016 EEOC charge because Plaintiff alleges she only received a "response," which is not a right-to-sue letter, on April 20, 2017, over one month after Plaintiff filed the Amended Complaint.[15] (Def. Reply Mem. 2.) Defendant further argues that any claims related to the September 9, 2016 EEOC charge which rely on discrete discriminatory or retaliatory acts occurring prior to April 18, 2015,[16] are also time-barred. (Def. Reply Mem. 3.)

[15]    Defendant does not argue that Plaintiff has failed to exhaust her claims with respect to the March 4, 2016 EEOC charge, or that the claims are time-barred, and the Court therefore does not address whether those claims have been exhausted or are timely. *See Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) ("[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense.").

[16]    Defendant does not explain how it arrived at the April 18, 2015 date, (500 days prior to the filing of Plaintiff's September 9, 2016 EEOC charge), which appears untethered to any of Plaintiff's EEOC charges.

A claimant may bring suit in federal court only if she has first filed a timely complaint with the EEOC and obtained a right-to-sue letter. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII ... statutory scheme[ ]; accordingly, it is a precondition to bringing such claims in federal court." (alterations in original) (internal quotation marks omitted) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ) ); *Hewitt v. N.Y.C. Dep't of Health & Mental Hygiene*, 535 F. App'x 44, 45 (2d Cir. 2013) (affirming district court finding that plaintiff "failed to administratively exhaust her Title VII retaliation claim by failing to include that claim in her administrative complaint"); *Tanvir v. N.Y.C. Health & Hosp. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." (citation omitted) ); *see also Canty v. Wackenhut Corr. Corp.*, 255 F. Supp. 2d 113, 117 (E.D.N.Y. 2003) (finding plaintiff's allegation that she had filed an EEOC grievance insufficient for purposes of exhaustion where plaintiff did not allege receipt of right-to-sue letter).

Arroyo-Horne v. City of New York, Slip Copy (2018)

Under Title VII, a plaintiff in New York must file a charge with the EEOC within 300 days after an alleged unlawful employment practice occurred. *42 U.S.C. § 2000e-5(e)(1)*; *Perez v. Harbor Freight Tools*, 698 F. App'x 627, 628 (2d Cir. 2017); *Patterson v. Cty. Of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004). This requirement is analogous to a statute of limitations. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015); *Patterson*, 375 F.3d at 220. "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Legnani*, 274 F.3d at 686 (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999) ). Courts look at "factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving" to determine whether the claims are reasonably related. *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) ); *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 158 (2d Cir. 2008); *Fowlkes*, 790 F.3d at 386 (vacating dismissal and remanding to the district court to determine whether futility excused exhaustion and noting that because of the "close resemblance" of the claims to those presented in the EEOC charge, the "reasonably related" exception may apply). Claims are reasonably related if: (1) the alleged discriminatory conduct "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) the claim is one of "retaliation by an employer against an employee for filing an EEOC charge;" and (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotations and citations omitted).

### 1. March 4, 2016 and September 9, 2016 EEOC charges

**\*8** Plaintiff alleges that she filed a charge with the EEOC on March 4, 2016, and received a right-to-sue letter on April 8, 2016. (Pl. Opp'n 1–2.) Plaintiff also alleges that she filed a charge with the EEOC on September 9, 2016 and received a right-to-sue letter on April 20, 2017.[17] (*Id.*) Plaintiff asserts that both charges named the NYPD and the City of New York and alleged violations of Title VII and claims under section 1983. (*Id.*) Plaintiff does not

provide any additional information about the allegations in the charges, nor does she provide copies of her March 4, 2016 or September 9, 2016 EEOC charges or the April 20, 2017 right-to-sue letter.[18] Without these documents or any explanation from Plaintiff as to the factual basis for her Title VII claim as presented to the EEOC, the Court is unable to determine whether Plaintiff has exhausted her Title VII claims. However, the Court notes that Plaintiff's references to Title VII in the Amended Complaint and her opposition papers refer to claims of racial discrimination, retaliation, and hostile work environment. (*See* Am. Compl. ¶¶ 10, 13; Pl. Opp'n.) Therefore, the Court infers that those are the claims raised in her March 4, 2016 and September 9, 2016 EEOC charges.

[17]    Plaintiff received the April 20, 2017 right-to-sue letter just over one month after filing the Amended Complaint. However, because the Court is allowing Plaintiff to amend the Amended Complaint, the Court will address the merits of the claims raised in the September 9, 2016 EEOC charge. *See Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 192 (E.D.N.Y. 2016) (waiving plaintiff's failure to obtain a right-to-sue letter prior to commencement of litigation where plaintiff exercised diligence and subsequently received letter); *McLeod v. Lowe's Home Improvement*, No. 09-CV-834, 2010 WL 4366901, at *5 (N.D.N.Y. Oct. 28, 2010) ("When a plaintiff brings an action before receiving a right-to-sue notice, the defect may be cured if the plaintiff subsequently receives the notice.") (citing *Weise v. Syracuse Univ.*, 522 F.2d 397, 413 (2d Cir. 1975) ); *Civil Serv. Emps. Ass'n v. New York State Dep't of Parks, Recreation and Historic Preservation*, 689 F. Supp. 2d 267, 276 (N.D.N.Y. 2010) ("[A] plaintiff who commences a Title VII action before receiving a right-to-sue letter may nonetheless maintain the action upon subsequent receipt of the letter.") (citing *Blanke v. Rochester Tel. Corp.*, 36 F. Supp. 2d 589, 592 n.1 (W.D.N.Y. 1999) ); *see also Grey v. Promenade Rehab. and Care Ctr.*, 145 F. App'x 705, 707 (2d Cir. 2005) (finding "administrative exhaustion requirements may be waived to serve equity").

[18]    Plaintiff attached the April 8, 2016 right-to-sue letter to the original complaint but not to the Amended Complaint. (Compl. 16, Docket Entry No. 1.) The Court nevertheless considers the letter. The letter states that "the EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge," and provides no additional information as to the nature of the charge. (*Id.*)

### A. March 4, 2016 EEOC charge

The unlawful conduct forming the basis of Plaintiff's March 4, 2016 EEOC charge must have occurred within 300 days of the filing of the charge, making May 9, 2015 the earliest date Plaintiff can allege conduct violating Title VII. Any claims related to this charge relying on discriminatory and retaliatory acts that occurred prior to May 9, 2015 are time-barred.

The only alleged unlawful conduct that falls within this period are the command disciplines that Plaintiff received on May 18, 2015. (Am. Compl. ¶ 20.)

### B. September 9, 2016 EEOC charge

Similarly, Plaintiff's claims arising under the September 9, 2016 charge must be based on unlawful conduct occurring within 300 days of the filing of the charge, making November 14, 2015 the earliest date Plaintiff can allege conduct violating Title VII. None of the alleged conduct falls within this 300-day period.

However, because Plaintiff does not provide dates for each allegation in the Amended Complaint, the Court liberally construes the Amended Complaint and considers the merits of all of the alleged discriminatory acts. *See Deravin, 335 F.3d at 200* ("[T]he pleading requirements in discrimination cases are very lenient, even *de minimis*." (internal citations and quotation marks omitted) ). Therefore, the Court will address the merits of Plaintiff's Title VII claims.

### iii. Title VII discrimination claim

**\*9** Plaintiff alleges that the NYPD discriminated against her on the basis of her race in violation of Title VII. (Am. Compl. ¶ 10.)

Defendant argues that Plaintiff fails to establish a prima facie case of discrimination because the adverse employment actions "were not materially adverse changes to the terms and conditions of her employment, and the actions did not occur under circumstances giving rise to an inference of discrimination." (Def. Mem. 13.)

Title VII discrimination claims are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981); *United States v. City of New York*, 717 F.3d 72, 83–84 (2d Cir. 2013) (discussing application of *McDonnell Douglas* framework to race discrimination claim). Under the framework "a plaintiff must first establish a *prima facie* case of discrimination by showing that: '(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.' " *Vega*, 801 F.3d at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ). If the plaintiff meets this "minimal" burden, *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008), a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct, *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff to show that the defendant-employer's reason was pretext for the discrimination. *Id.* at 83.

At the pleading stage, however, a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas* prima facie case. *Littlejohn*, 795 F.3d at 311; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (discussing *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) ) ). Instead, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Javed v. Medgar Evers Coll. of City Univ. of New York*, 724 F. App'x 73, 74 (2d Cir. 2018) (citation omitted). The allegations must "put forward 'at least minimal support for the proposition' " that the adverse employment action was "motivated by [the employer's] discriminatory intent." *Javed*, 724 F. App'x at 74 (quoting *Vega*, 801 F.3d at 85); *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in

the employment decision.").

**\*10** Plaintiff identifies her race as "Afroamerican," (Am. Compl. ¶ 13), and Defendant does not dispute that she is a member of a protected group, (*see* Def. Mem. 13). Plaintiff further states that she is qualified for her position as her "evaluations are 'Above Standards' or 'Meets Standards.' "[19] (Pl. Opp'n 2.) Defendant does not contest Plaintiff's qualifications.

[19]   Plaintiff also states, presumably referring to the disciplinary actions she received, that "the negative evaluations could be the reason she has been denied other positions in the 69th precinct as well as her tardiness record." (Am. Compl. ¶ 42.)

### 1. Adverse employment actions

Plaintiff alleges that Defendant: (1) altered her work schedule and unfairly assigned her work, (Am. Compl. ¶¶ 16–19); (2) denied her transfer requests and requests for overtime, (*id.* ¶¶ 13, 23–24); (3) issued command disciplines to Plaintiff, (*id.* ¶ 20); and (4) interfered with Plaintiff's use of an office desk fan, (*id.* ¶ 50) and removed her chair from her workstation, (*id.* ¶ 26).

As detailed below, Defendant argues that Plaintiff's alleged adverse employment actions are unsupported and not materially adverse changes to the terms and conditions of her employment. (Def. Mem. 13–14.)

An "adverse employment action" means "a materially adverse change in the terms and conditions of employment." *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ). There is "no bright-line rule to determine whether a challenged employment action is sufficiently significant to serve as the basis for a claim of discrimination." *Id.* (citing *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 437, 446 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ). In the context of Title VII discrimination claims, "[e]xamples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.' " *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting

*Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ); *see, e.g., Robinson v. Dibble*, 613 F. App'x 9, 12 (2d Cir. 2015) (noting that the plaintiff's termination constituted an "adverse employment action"); *Levitant v. City of N.Y. Human Res. Admin.*, 558 F. App'x 26, 29 (2d Cir. 2014) ("It is well-established that a failure to promote is an adverse employment action." (citing *Tregelia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ) ); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (holding that an adverse employment action includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." (citations and internal quotation marks omitted) ). However, conduct that is a "mere inconvenience" does not rise to the level of an adverse employment action. *Sanders*, 361 F.3d at 755.

### A. Schedule change and unfair work assignments

Plaintiff alleges that the change in her work hours and the fact that she often had to complete her co-worker's work are both adverse employment actions. Defendant argues that schedule changes generally are not adverse employment actions and that the unfair work assignments were a mere inconvenience. (Def. Mem. 15.)

**\*11** A change in schedule, without more, is not an adverse employment action for purposes of a discrimination claim. *See Seale v. Madison Cty.*, 929 F. Supp. 2d 51, 75 (N.D.N.Y. 2013) (collecting cases); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[R]eceiving unfavorable schedules or work assignments do[es] not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of [the] [p]laintiff's employment." (citation omitted) ); *see also Mills v. S. Connecticut State Univ.*, 519 F. App'x 73, 76 (2d Cir. 2013) (noting that "schedule changes ... were not materially adverse employment actions supporting Title VII retaliation claim") (citing *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) ).

Likewise, a claim of unfair work assignments does not rise to the level of an adverse employment action unless there is a showing that the assignments resulted in a "material detriment to the employee's working conditions" and not just a "mere inconvenience." *Ward v. Shaddock*, No. 14-CV-7660, 2016 WL 4371752, at \*5

(S.D.N.Y. Aug. 11, 2016) (citing *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004); and then citing *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) ); *see also Hubbard v. Port Auth. of N.Y. and N.J.*, No. 5-CV-4438, 2008 WL 464694, at *11 (S.D.N.Y. Feb. 20, 2008) ("Plaintiffs' allegations of excessive or unfair work assignments, without more, do not amount to adverse employment actions because they are not materially adverse changes in the terms or conditions of their employment." (citations and internal quotations marks omitted) ). "[A]ssignments that are part of an employee's normal responsibilities are not 'adverse employment actions' where ... the rate of pay and benefits remains the same." *Rodriguez v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234, 2013 WL 5230037, at *3 (E.D.N.Y. Sept. 16, 2013) (collecting cases); *see also Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ("Changes in assignments or responsibilities that do not 'radically change' the nature of work are not typically adverse employment actions." (alteration omitted) (citing *Galabya*, 202 F.3d at 640) ).

A "[d]isproportionately heavy workload could perhaps be an adverse action, if the additional work significantly changed the employee's responsibilities so as to diminish that worker's role or status...." *Lopez v. Flight Servs. & Sys., Inc.*, 881 F. Supp. 2d 431, 441 (W.D.N.Y. 2012) (quoting *Chacko v. Connecticut*, No. 07-CV-1120, 2010 WL 1330861, at *7 (D. Conn. Mar. 30, 2010) ); *see also Feingold*, 366 F.3d at 152–53 (finding that being subjected to "an excessive workload" could be an adverse employment action); *Edwards*, 957 F. Supp. 2d at 211 ("[T]he 'assignment of a disproportionately heavy workload' can constitute an adverse employment action." (quoting *Grana v. Potter*, No. 06-CV-1173, 2009 WL 425913, at *12 (E.D.N.Y. Feb. 19, 2009) ) ); *see, e.g., Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 494–95 (E.D.N.Y. 2016) (finding that the plaintiff pled an adverse employment action by alleging that he "was at times not provided with a utility assistant, requiring him to do the work of engineer and assistant at the same time, and was asked to clean paint [sic]" even though the same was not expected of other engineers (internal quotations and citations omitted) ); *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 223–24 (E.D.N.Y. 2014) (finding the plaintiff sufficiently pled the adverse employment action on account of his race and gender where he was assigned seven weeks of "duty" while other similarly situated employees were only given two weeks).

**\*12** The change in Plaintiff's work schedule is not an adverse employment action. Plaintiff claims that because of the schedule change, she had to arrange for her mother to be cared for and had to venture into her "high-crime" neighborhood in the dark, early morning hours. (Am. Compl. ¶ 17.) As alleged, Plaintiff's claim regarding her change of schedule is not an adverse employment action because Plaintiff has not alleged that the schedule change had any impact on the conditions of her employment. *See Smalls*, 396 F. Supp. 2d at 371. Instead, Plaintiff alleges that the schedule change inconvenienced her and made it more difficult to commute to work and care for her ailing mother. *See Feingold*, 366 F.3d at 152 (noting that an adverse employment action is "more disruptive than a mere inconvenience"). Similarly, Plaintiff's completion of PAA Morgan's work is not an adverse employment action because Plaintiff does not allege that *Defendant* assigned her the additional work or that the additional work significantly changed her responsibilities.

**B. Denial of transfers and overtime assignments**

Plaintiff alleges that from October 1, 2009 to March 8, 2017, on unspecified dates, she made several requests for a transfer of assignment, including consideration for available positions for which she was qualified in the Domestic Violence Unit, the Administrative Lieutenants Office, and the Payroll Department. (Am. Compl. ¶¶ 13, 42.) Plaintiff alleges that the positions in the Domestic Violence Unit and Administrative Lieutenants Office "offered objectively preferred benefits such as flex time," which would have allowed her more flexibility to enable her to take care of her mother. (*Id.*) Plaintiff further alleges that the position in the Payroll Department offered an increase in salary. (Pl. Opp'n 2.)

Defendant argues that the denied transfers were not adverse employment actions because Plaintiff has not established the positions were objectively preferable to Plaintiff's position. (Def. Mem. 14.) While acknowledging that denial of overtime assignments can be adverse employment actions, Defendant maintains that Plaintiff has not alleged sufficient facts to show that her overtime requests were denied, any actual loss of income, or that other employees were allowed to work overtime. (*Id.* at 15.)

"It is well-established that a failure to promote is an adverse employment action." *Levitant*, 558 F. App'x at 29 (citing *Tregelia*, 313 F.3d at 720). However, denial of a transfer or a position is not synonymous with failure to promote. *See Moore v. Metro. Transp. Auth.*, 999 F. Supp. 2d 482, 497 (S.D.N.Y. 2013) (holding that a transfer denial is adverse when "the sought for position is

materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other objective indicator of desirability." (quoting *Beyer v. Cty. of Nassau*, 524 F.3d 160, 165 (2d Cir. 2008) ) ); *Preston v. Bristol Hosp.*, 645 F. App'x 17, 19 (2d Cir. 2016) (denying Title VII employment discrimination claim based on denial of position on a certain team when the change was "not a promotion or new position" and "the role did not warrant any additional compensation").

A deprivation of the opportunity to earn overtime may be considered a materially adverse employment action under certain circumstances. *See Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (holding that the denial of overtime was an adverse employment action where plaintiff was paid less than subordinate male employees that she supervised and "was not allowed to earn overtime pay or comp time and ... she was the only employee required to submit written requests to work overtime"); *Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012) (finding that plaintiff who was denied requested overtime had shown adverse employment action where plaintiff earned less income than coworkers with less seniority based on overtime opportunities); *Little v. Nat'l Broad. Co., Inc.*, 210 F. Supp. 2d 330, 379 (S.D.N.Y. 2002) (evidence that plaintiff "incurred an actual loss in income because of lost overtime and that he was forced to work undesirable shifts with an erratic schedule ... if true, could prove that [plaintiff] was subject to an adverse employment action").

**\*13** The denied transfers to the Domestic Violence Unit and Administrative Lieutenants Office were not adverse employment actions. Plaintiff alleges that these positions were more desirable because they offered more flexible hours that would allow her to better care for her mother. (Am. Compl. ¶¶ 13, 42.) However, Plaintiff fails to allege that the positions would have been "a promotion" or provide any objective indicator of desirability rendering those positions materially more advantageous. *Preston*, 645 F. App'x 19. Rather, Plaintiff alleges only a subjective preference for these positions because they would better accommodate her schedule. *See Beyer*, 524 F.3d at 164 ("A denial of a transfer may also constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; 'subjective, personal disappointment[ ]' is not enough." (quoting *Galabya*, 202 F.3d at 640) ); *see also Antonmarchi v. Consol. Edison Co. of New York*, No. 03-CV-7735, 2008 WL 4444609, at *14 (S.D.N.Y. Sept. 29, 2008), (finding denial of transfer to position with better hours was not adverse employment action) *aff'd*, 514 F. App'x 33 (2d Cir. 2013); *Daniels v. Connecticut*,

No. 12-CV-0093, 2015 WL 4886455, at *8 (D. Conn. Aug. 17, 2015) ("[plaintiff] also suggests that the ... position is a "preferred working schedule for officers," but an unfavorable schedule is not an adverse employment action") (citing *Albuja v. Nat'l Broad. Co. Universal*, 851 F. Supp. 2d 599, 608 (S.D.N.Y. 2012) ); *Monroe v. City of Danbury*, No. 09-CV-02132, 2014 WL 3943632, at *6 (D. Conn. Aug. 11, 2014) ("The Court is not persuaded that the ability to work flexible hours, in and of itself, is materially significant for purposes of establishing an adverse employment action."). In contrast, the denial of the transfer position in the Payroll Department could be considered an adverse employment action because it "warrant[ed] ... additional compensation," *see Preston*, 645 F. App'x at 19. Accordingly, Plaintiff has alleged an adverse employment action with respect to the denial of her requested transfer to the Payroll Department.

Plaintiff also alleges that she was denied overtime opportunities, was denied overtime compensation even when she worked beyond her scheduled hours, and was told that she could not perform overtime in her "immediate assigned work office" but saw co-workers working overtime in their "immediate assigned office(s)." (*Id.* ¶¶ 23–24.) Plaintiff does not allege that she incurred an actual loss in income or provide any additional information concerning her entitlement to overtime opportunities and compensation. *See Henry*, 18 F. Supp. 3d at 406 (finding plaintiff's "conclusory allegation that she was denied overtime, without more, is insufficient to substantiate an adverse employment action"); *Little*, 210 F. Supp. 2d at 379 (recognizing denial of overtime as an adverse action where plaintiff produced evidence that "he incurred an actual loss in income because of lost overtime"). Nevertheless, the Court assumes for the purposes of this Memorandum and Order that Plaintiff has stated an adverse employment action regarding the denial of overtime opportunities and compensation.

### C. Issuance of command disciplines

At an unspecified time during Plaintiff's employment at the 69th Precinct, SPAA Jason issued command disciplines to Plaintiff and recommended a loss of vacation days for "allegedly failing to type a complaint." (Am. Compl. ¶ 50.) In addition, on May 18, 2015, Plaintiff received four command disciplines from Grandstaff. (*Id.* ¶ 20.) Plaintiff alleges the reprimands were motivated by her race and retaliation and were

unfounded. (*Id.*) Plaintiff states that "Command Disciplines can affect other job opportunities with the City of New York." (Pl. Opp'n 3.) Defendant argues that Plaintiff's poor evaluations, standing alone, are not adverse employment actions because Plaintiff does not allege any adverse effects of the disciplines. (Def. Mem. 14–15.)

Disciplinary actions, including negative written evaluations or reprimands, are adverse employment actions if they affect an employee's terms and conditions of employment, such as promotion, wages, or termination. *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) (finding "notice of discipline" and "counseling memo" insufficient to constitute adverse action when the plaintiff did "not describe its effect or ramifications, how or why the effect would be serious, [or] whether it went to any file"), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Henry*, 18 F. Supp. 3d at 407 ("[T]he threat of disciplinary action, without more, does not constitute an adverse employment action." (first citing *Honey v. Cty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002); and then citing *Bowles v. N.Y.C. Transit Auth.*, No. 00-CV-4213, 2006 WL 1418602, at *10 (S.D.N.Y. May 23, 2006), *aff'd*, 285 F. App'x 812 (2d Cir. 2008) ) ); *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 557 (W.D.N.Y. 2013) (finding that "reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation").

**\*14** Plaintiff fails to state whether the command disciplines had any material effect on the terms and conditions of her employment and therefore fails to show that the disciplines rise to the level of an adverse employment action. *See Herling v. N.Y.C. Dep't of Educ.*, No. 13-CV-5287, 2014 WL 1621966, at *7 (E.D.N.Y. Apr. 23, 2014) (dismissing a discrimination claim based on allegations that "write ups" and other "disciplinary actions [were] taken against him" because the plaintiff failed to allege that they were "accompanied by any negative consequences to the conditions of [the plaintiff's] employment"). While Plaintiff alleges generally that such disciplinary actions can affect job opportunities, Plaintiff has not alleged that they have specifically affected *her* job opportunities.

### D. Other discriminating and harassing conduct

Plaintiff alleges that the NYPD discriminated against her by allowing the confiscation of her desk fan, (Am. Compl. ¶¶ 48–50), and by removing her chair from her workstation and giving it to PAA Margaret, (*id.* ¶ 26).

Conduct that is a "mere inconvenience" does not rise to the level of a materially adverse employment action. *Sanders*, 361 F.3d at 755; *see also Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 435 (E.D.N.Y. 2015) ("The allegations regarding the [denial of] "post-its" and the office shift, even if true, do not rise above a level of "mere inconvenience" for purposes of an ADA claim"); *Smalls*, 396 F. Supp. 2d at 371 ("[B]eing yelled at [and] receiving unfair criticism ... do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of [the] [p]laintiff's employment").

Plaintiff fails to allege facts showing that these office disputes resulted in a materially adverse employment action, as neither incident rises above a "mere inconvenience." *See Sanders*, 361 F.3d at 755.

### 2. Inference of discrimination

With respect to Plaintiff's alleged adverse employment action related to the denial of transfer, Defendant argues that "Plaintiff fails to sufficiently establish an inference of discrimination" because Plaintiff admits that her record of negative evaluations and tardiness may have factored into her lack of transfers. (Def. Mem. 4.) Defendant does not address whether Plaintiff has demonstrated an inference of discrimination with respect to the alleged adverse employment related to the denial of Plaintiff's overtime opportunities and compensation.

Plaintiff claims that her evaluations were "above standards" or "meets standards" and she was denied positions "given to a[ ] coworker outside Plaintiff[']s protected class although Plaintiff was more qualified." (Pl. Opp'n 2.)

To survive a motion to dismiss an employment discrimination claim, a plaintiff must allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87; *see Kpaka v. City Univ. of N.Y.*, 708 F. App'x 703, 704 (2d Cir. 2017). Whether facts give rise to a plausible inference of discrimination "is a 'flexible [standard] that can be

satisfied differently in differing factual scenarios.' " *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) ). "The facts required ... to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather "need only give plausible support to a minimal inference of discriminatory motive." *Id.*; *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.") "Courts making the plausibility determination should do so mindful of the elusive nature of intentional discrimination and the concomitant frequency by which plaintiffs must rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." *Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *5 (S.D.N.Y. Sept. 30, 2016) (quoting *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998) ) (some citations and internal quotation marks omitted).

**\*15** "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.' " *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) ); *see also Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (finding a plausible inference where an African-American bus driver was terminated for conduct similar to that of three white bus drivers, who were placed on leave).

Plaintiff fails to allege facts to support her claim that either alleged adverse employment action was discriminatory based on her race. Plaintiff does not allege any facts from which the Court can infer that discrimination played a role in the denial of transfer to the Payroll Department. Plaintiff does not identify the individual appointed to this position or their race. Nor does Plaintiff provide the circumstances under which she was denied this transfer. (*See* Pl. Opp'n 2.) Instead, Plaintiff concedes that "the negative evaluations could be the reason she has been denied other positions in the 69th precinct as well as her tardiness record." (Am. Compl. ¶ 42.)

Plaintiff also fails to allege any facts from which the Court can infer that discrimination played any role in the denial of overtime opportunities. Plaintiff does not provide the race of other employees who were afforded overtime opportunities or explain the circumstances under which her requests were denied. (*Id.* ¶¶ 23–24.)

Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's Title VII discrimination claim.

### iv. Title VII retaliation claim

Plaintiff alleges that Defendant retaliated against her "because of her prior complaints made both formally and informally," internally, and with the NYSDHR and the EEOC. (*Id.* ¶ 15.) These include Plaintiff's complaints against PAA Morgan in November of 2014, (Am. Compl. ¶ 17), and Plaintiff's complaint to the "proper supervisors" in November of 2015 about being subjected to "verbal abuse by a coworker who provoked a verbal argument with Plaintiff because of her race," (Pl. Opp'n 3). In addition, Plaintiff filed five charges, three with the EEOC and two with the NYSDHR: (1) April 23, 2003 NYSDHR charge, (Am. Compl. ¶ 12); (2) November 1, 2014 EEOC charge, (*id.* ¶ 14); (3) March 4, 2016 EEOC charge, (Pl. Opp'n 1–2); (4) July 7, 2016 NYSDHR charge, (Am. Compl. ¶ 10); and (5) September 9, 2016 EEOC charge, (Pl. Opp'n 1–2). Plaintiff also alleges that she made informal complaints to her supervisors regarding racial discrimination and retaliation although she does not specify the dates of these complaints. (Am. Compl. ¶ 15.)

Defendant argues that Plaintiff fails to adequately allege adverse employment actions and also fails to plead a causal connection between her protected activities and any adverse employment action. (Def. Mem. 16–17.)

Title VII bars retaliation by an employer against an employee because the employee "has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-(3)(a). Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Littlejohn*, 795 F.3d at 315. To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir.

2010) ).

**\*16** As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage the allegations need only give "plausible support to the reduced prima facie requirements...." *Id.* "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against him, (2) 'because' he has opposed any unlawful employment practice." *Vega,* 801 F.3d at 90.

### 1. Protected activity

Plaintiff alleges that she registered a number of formal and informal complaints both internally, and with the NYSDHR and the EEOC. (Am. Compl. ¶ 15.) Defendant does not dispute that these complaints are protected activities within the meaning of Title VII.

Filing either a formal or informal complaint challenging discrimination is a protected activity for purposes of retaliation claims under Title VII. *See Jagmohan v. Long Island R. Co.,* 622 F. App'x 61, 63 (2d Cir. 2015); *Summa v. Hofstra Univ.,* 708 F.3d 115, 126 (2d Cir. 2013). "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable." *Jagmohan,* 622 F. App'x at 64–65 (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir. 1998) ); *Summa,* 708 F.3d at 126 (holding that Title VII "protects employees [who] ... make[ ] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" (alterations in original) (quoting *Gregory v. Daly,* 243 F.3d 687, 700 (2d Cir. 2001) ). However, complaints cannot be so vague or "generalized that the employer could not "reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII." " *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 108 (2d Cir. 2011) (alteration and citation omitted); *see also Galdieri-Ambrosini,* 136 F.3d at 292 ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's

opposition was directed at conduct prohibited by Title VII."); *Ellis v. Century 21 Dep't Stores,* 975 F. Supp. 2d 244, 280 (E.D.N.Y. 2013) ("When making the complaint, [p]laintiff must do so in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of [the protected status]." (citation and internal quotation marks omitted) ).

Plaintiff's five charges with the NYSDHR and the EEOC and internal complaints regarding discrimination and retaliation are protected activity. However, Plaintiff's complaints about Morgan are not protected activity as they are unrelated to discrimination or any other employment practice that is unlawful under the statute. *See Summa,* 708 F.3d at 126. While Plaintiff may believe that racial discrimination was the basis for this complaint, the Court has no allegations before it from which it can conclude this belief was communicated to Defendant, i.e., that Plaintiff complained that Morgan's conduct was because of discrimination. *See Aspilaire v. Wyeth Pharms., Inc.,* 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009) ("While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity." (citation omitted) ).

### 2. Defendant's knowledge

**\*17** A plaintiff need only demonstrate that her employer has general corporate knowledge that a plaintiff engaged in a protected activity. *See Summa,* 708 F.3d at 125–26 (holding that "[n]othing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity" (citation and internal quotation marks omitted) ); *Papelino v. Albany Coll. of Pharmacy of Union Univ.,* 633 F.3d 81, 92 (2d Cir. 2011) ("Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice. 'Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.' " (citations omitted) ). In addition, a supervisor's knowledge of protected activity may be enough to impute general corporate knowledge of the activity to the entity. *See Zann Kwan v. Andalex Grp., LLC,* 737 F.3d 834, 844 (2d Cir. 2013) (holding that a discrimination complaint to an officer of the defendant-corporation imputed "general

Arroyo-Horne v. City of New York, Slip Copy (2018)

corporate knowledge of the plaintiff's protected activity" to the corporation).

Plaintiff does not assert that Defendant had any knowledge of Plaintiff's various alleged protected activities. Although it is likely that Defendant was notified of Plaintiff's EEOC and NYSDHR charges against it, Plaintiff bears the burden of pleading this notification. *See Littlejohn*, 795 F.3d at 316. Plaintiff may have sufficiently alleged that Defendant had knowledge of her November of 2015 complaint, which she claims to have reported to "the proper supervisors." *See Zann Kwan*, 737 F.3d at 844. However, as discussed below, this internal complaint is not causally related to any adverse employment action.

### 3. Adverse employment actions

Plaintiff alleges that Defendant retaliated against her by changing her schedule and removing her chair from her office and giving it to another employee. In addition, Plaintiff alleges that the four command disciplines received on May 18, 2015 were motivated by her race and retaliation. Plaintiff maintains the disciplines were unfounded because she: (1) never removed a locker room from her immediate work office, (2) was forced to remain on Precinct premises after the end of her scheduled tour due to work related reasons, (3) adhered to the 69th Precinct's custom of labeling office equipment, and (4) received verbal approval for her absence on Mother's Day. (*Id.* ¶ 20.) Plaintiff states that "Command Disciplines can affect other job opportunities with the City of New York." (Pl. Opp'n 3.)

Defendant argues that neither the schedule change, which "directly related to issues Plaintiff was having with another co-worker," nor the chair removal, which was merely a petty slight or minor annoyance, amounted to adverse employment actions. (Defs. Mem. 17.)

In contrast to discrimination claims, an adverse employment action in a retaliation claim is one that a reasonable employee would find materially adverse, meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington*, 548 U.S. at 57; *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ) (same). The scope of actions that may be materially adverse is thus broader for purposes of retaliation claims than for discrimination

claims. *See Hicks*, 593 F.3d at 165 (citing *Burlington*, 548 U.S. at 67).

In evaluating whether an action is materially adverse, " '[c]ontext matters,' as some actions may take on more or less significance depending on the context." *Tepperwien*, 663 F.3d at 568 (citation omitted); *see also Hicks*, 593 F.3d at 165 (noting that even minor acts that would be immaterial in some situations may be material in others). Title VII does "not set forth a general civility code for the American workplace." *Hicks*, 593 F.3d at 165 (quoting *Burlington*, 548 U.S. at 57) (internal quotation marks omitted); *see also Forest v. N.Y. State Office of Mental Health*, 672 F. App'x 42, 44 (2d Cir. 2016) (" '[P]etty slights or minor annoyances that often take place at work and that all employees experience' — are not materially adverse." (quoting *Tepperwien*, 663 F.3d at 568) ). However, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted); *see also Vogel v. CA, Inc.*, 662 F. App'x 72, 76 (2d Cir. 2016).

**\*18** The change to Plaintiff's schedule is not an adverse employment action. Although Plaintiff characterizes the change to her work schedule as "retaliation" for her complaint against Morgan, Plaintiff also concedes that the changes were intended to ensure that Plaintiff and Morgan did not perform overlapping work shifts. (Am. Compl. ¶ 42.) Defendant's attempt to resolve the interpersonal dispute between the two employees was intended to benefit Plaintiff and *improve* her working conditions, not serve as a deterrent to her making or supporting a discrimination charge. Accordingly, the change to Plaintiff's schedule cannot be construed as an adverse employment action based on Plaintiff's allegations as to the reason for the change. *See Mills*, 519 F. App'x at 76 (noting that "schedule changes ... were not materially adverse employment actions supporting Title VII retaliation claim" (citing *Tepperwien*, 663 F.3d at 568) ).

The removal of Plaintiff's chair from her office is not an adverse employment action as pleaded because Plaintiff has not explained what adverse impact this removal had on her ability to perform her job beyond constituting a "mere inconvenience." *See Sanders*, 361 F.3d at 755. While Plaintiff states that that she was forced to stand, Plaintiff has not alleged that since the removal of the chair, she has been made to stand and perform her job duties.[20] (Am. Compl. ¶ 26.)

[20]   Regardless, as discussed below, Plaintiff has not demonstrated that the removal of her chair is causally related to a protected activity.

Taken collectively, the four allegedly unfounded command disciplines that Plaintiff received may be considered an adverse employment action as a reasonable employee could find the receipt of such disciplines materially adverse and it could deter that employee from complaining. *See Vega*, 801 F.3d at 92 ("[A] poor performance evaluation could very well deter a reasonable worker from complaining."). As Plaintiff explains, these disciplines can affect job opportunities with the City of New York. *See Pinckney v. New York City Police Dep't*, No. 01-CV-2437, 2005 WL 282870, at *4 (E.D.N.Y. Feb. 3, 2005) ("A materially adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." (citation and internal quotation marks omitted) ).

#### 4. Causal connection

To sufficiently plead that a defendant-employer took an adverse employment action "because" the plaintiff opposed an unlawful employment practice, the plaintiff "must plausibly allege that the retaliation was a 'but for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ). But-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan*, 737 F.3d at 846); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 497 (E.D.N.Y. 2016).

A causal connection between the protected activity and the adverse action can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory actions directed against the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) ); *see also Terry*, 336 F.3d at 152 ("Proof of such a causal connection can be established directly through evidence of retaliatory animus directed against a plaintiff, or indirectly by showing that the protected activity was followed closely by discriminatory treatment ... such as disparate treatment of fellow employees who engaged in similar conduct."

(citation and internal quotation marks omitted) ); *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001) (same).

**\*19** Temporal proximity between the protected activity and the adverse action can support a causal connection. *Feingold*, 366 F.3d at 156–57 ("[T]he requirement that [the plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two." (collecting cases) ); *see also Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (first citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001); and then citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) ("Ordinarily, causation may be inferred from close temporal proximity.") ).

As noted above, Plaintiff alleges that Defendant retaliated against her "because of her prior complaints made both formally and informally," internally, and with the NYSDHR and the EEOC. (Am. Compl. ¶ 15.) Plaintiff specifically alleges that Defendant retaliated against her for complaining about being subjected to "verbal abuse by a coworker who provoked a verbal argument with Plaintiff because of her race," (Pl. Opp'n 3), and for making complaints against PAA Morgan, (Am. Compl. ¶ 17).

Plaintiff provides no direct evidence that any of the alleged protected activities were a "but-for" cause of Defendant's alleged adverse employment actions. *See Vega*, 801 F.3d at 90. The Court therefore considers whether there is temporal proximity between the alleged adverse actions — changing her schedule, issuing her command disciplines, and removing her chair — and Plaintiff's protected activities. Because the most recent adverse employment action Plaintiff alleges took place in May of 2015, (Am. Compl. ¶ 20), the Court need only consider protected activities which took place *prior* to that date. As a result, the November 2015 complaint; the March 4, 2016 EEOC charge; the September 9, 2016 EEOC charge; and the July 7, 2016 NYSDHR charge are not relevant to this analysis.

Even assuming that the removal of Plaintiff's chair is an adverse employment action, Plaintiff does not state when her chair was removed, (*see id.* ¶ 26), and therefore cannot show temporal proximity to any protected activity.

Plaintiff alleges that Grandstaff changed her schedule on November 1, 2014 and that "[s]aid actions were retaliatory for [her] complaints regarding PAA Monique

Morgan." (*Id.* ¶ 17.)[21] However, as discussed above, Plaintiff's complaints with respect to Morgan are not protected activity and the change to her schedule was not an adverse employment action. Therefore, any causation between these events cannot support a retaliation claim.

| [21] | The November 1, 2014 schedule change took place eleven years after Plaintiff filed the April 23, 2003 NYSDHR charge, (Am. Compl. ¶ 17), one year before her November of 2015 complaint regarding verbal abuse, one year and four months before her March 4, 2016 EEOC charge, one year and eight months before the July 7, 2016 NYSDHR charge, and one year and ten months before the September 9, 2016 EEOC charge. Thus, Plaintiff cannot allege retaliation as a result of any of these protected activities. |
|---|---|

The command disciplines Grandstaff issued Plaintiff on May 18, 2015,[22] (*id.* ¶ 20), lack temporal proximity to Plaintiff's April 23, 2003 NYSDHR charge.[23] However, they were issued only six months after the November 1, 2014 EEOC charge, which is sufficient to establish temporal proximity. *See Summa*, 708 F.3d at 128 (finding that a "seventh-month gap" between the filing of plaintiff's lawsuit and the decision to terminate her employment was not "prohibitively remote"); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding the "passage of only six months ... sufficient to support an inference of a causal connection")

| [22] | Although the Amended Complaint states that Plaintiff received these four command disciplines on May 18, 2015, (Am. Compl. ¶ 20), in Plaintiff's opposition papers, she states that she was given these disciplines about eight months later, on January 27, 2016, (Pl. Opp'n 2). Plaintiff's retaliation claim depends in part on which of these two dates is correct. If the date Plaintiff received these disciplines is January 27, 2016, this adverse employment action is temporally proximate to Plaintiff's November 2015 complaint to her supervisors regarding the verbal abuse Plaintiff's co-worker subjected Plaintiff to "because of her race." (*Id.* at 3.) Plaintiff alleges that, as a result of this November 2015 complaint, "she was retaliated by supervisors with Command Disciplines and Complaints." (*Id.*) Given the temporal proximity between these two events — approximately two months — Plaintiff may have sufficiently pleaded causation with respect to the issuance of command disciplines depending on which date she received the command disciplines. |
|---|---|

| [23] | The May 18, 2015 command discipline also took place six months before Plaintiff's November of 2015 complaint regarding verbal abuse, nine months before her March 4, 2016 EEOC charge, one year and one |
|---|---|

month before her July 7, 2016 NYSDHR charge, and one year and three months before her September 9, 2016 EEOC charge, and therefore could not have been caused by these protected activities.

**\*20** However, as discussed above, because Plaintiff has not alleged that Defendant had knowledge of a protected activity, the Court grants Defendant's motion to dismiss Plaintiff's Title VII retaliation claim.

### v. Hostile Work Environment claim

Plaintiff alleges that she was subjected to a "hostile work environment," (Am. Compl. ¶ 13), and describes various harassing conduct such as the removal of her chair and fan, (*id.* ¶¶ 26, 50). Plaintiff also alleges that a confrontation between her and an unnamed co-worker who subjected her to verbal abuse created a hostile work environment in November of 2015. (Pl. Opp'n 3.)

Defendant argues that Plaintiff fails to sufficiently allege that the incidents Plaintiff describes as harassing were linked to her race. (Def. Mem. 18.)

To plead a Title VII hostile work environment claim, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) ); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) ("[T]o analyze a hostile work environment claim, we are required to look to the record as a whole and assess the totality of the circumstances ... considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance' ") (quoting *Harris*, 510 U.S. at 17).

Hostile work environment claims are "different in kind

from discrete acts" since "[t]heir very nature involves repeated conduct," and "[t]he 'unlawful employment practice' therefore cannot be said to occur on any particular day." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2015). "Accordingly, consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* (citation and internal quotation marks omitted). However, actions outside the limitations period must be sufficiently similar in kind to those within the relevant time period such that the events constitute the "same" hostile work environment. *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (holding that even facially neutral incidents must be considered in determining whether a hostile work environment exists under Title VII); *McGullam*, 609 F.3d at 77; *see also Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) ("[I]ncidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination — for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not.").

**\*21** While most of Plaintiff's allegations are race neutral, Plaintiff alleges that the command disciplines issued by Grandstaff and Jason were racially motivated and Plaintiff "feels [it] was discriminatory" when an open position in the Domestic Violence Unit was given to an employee of Asian descent. (Am. Compl. ¶¶ 13, 20, 50.) However, even when liberally construed and viewed in the aggregate, Plaintiff's allegations do not demonstrate objectively severe or pervasive acts that rendered Plaintiff's work environment hostile. *See, e.g., Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (holding that "a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment" (internal citations and quotation marks omitted) ).

Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's hostile work environment claim without prejudice.

### c. FMLA claims

Defendant argues that Plaintiff fails to state a claim for FMLA interference because she has not established that she was eligible for FMLA leave, that she exercised her rights to FMLA leave, or that she suffered any adverse employment action as a result of taking FMLA leave. (Def. Mem. 20–21.)

Plaintiff argues that she is currently eligible for FMLA leave because she has been employed with the NYPD for approximately seventeen years. (Pl. Opp'n 4.) Plaintiff asserts that the NPYD unlawfully denied her FMLA leave request in November of 2016 when she fractured her foot and retaliated against her by denying her overtime. (*Id.*)

"The FMLA gives eligible employees an 'entitlement' to twelve weeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.' " *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D) ). It " 'creates a private right of action to seek both equitable relief and money damages against any employer ...' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." *Id.* (quoting *Nev. Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 724–25 (2003) ). "The Second Circuit recognizes distinct claims of interference and retaliation under the FMLA." *Sista*, 445 F.3d at 175; *see also Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017) ("FMLA claims come in at least two varieties: interference and retaliation." (citing *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) ) ). Retaliation claims "involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subject to some adverse employment action by the employer." *Woods*, 864 F.3d at 166.

An employee is eligible for twelve weeks of FMLA leave once she has been employed for at least twelve months, and has worked at least 1250 hours in the previous twelve-month period. 29 U.S.C. § 2611(2)(A); *Porter v. Donahoe*, 484 F. App'x 589, 590 (2d Cir. 2012); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 715 (2d Cir. 2001). "[E]ligibility is a threshold issue which has to be proved by [the] plaintiff in order for him to be entitled to relief." *Bulmer v. Yellow Freight Sys., Inc.*, 213 F.3d 625, 625 (2d Cir. 2000); *see also Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012); *Diby v. Kepco Inc.*, No. 16-CV-583, 2016 WL 5879595, at *3 (E.D.N.Y. Oct. 7, 2016) (dismissing FMLA interference claims *sua sponte* for failure to allege eligibility requirements). "[S]imply alleging that the employee was employed full-time, is not

enough to establish the 1,250 hour requirement under the FMLA." *Bakeer v. Nippon Cargo Airlines, Co., Ltd.*, No. 09-CV-3374, 2011 WL 3625103, at *40 (E.D.N.Y. July 25, 2011) (citation and internal quotation marks omitted), *report and recommendation adopted*, No. 09-CV-3374, 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011).

**\*22** Plaintiff alleges that she has been employed with the NYPD for approximately seventeen years, (Pl. Opp'n 4), that she is eligible for FMLA leave, (*id.*), and that, as of November 1, 2014, she was scheduled to work forty hours a week, (Am. Compl. ¶ 17). These allegations are insufficient to assert FMLA eligibility because Plaintiff does not assert that she worked 1250 hours in the twelve-month period preceding her claim. *See Bernadotte v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-965, 2014 WL 808013, at *3 (E.D.N.Y. Feb. 28, 2014) ("The FMLA gives eligible employees an 'entitlement' to twelve weeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.' " (quoting *Sista*, 445 F.3d at 174) ); *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011) (holding that even where the plaintiff alleged that he worked 1250 hours in a twelve-month period, the plaintiff "must plead that he had worked the required number of hours in the twelve months preceding the dates for which he requested FMLA leave"); *Bakeer*, 2011 WL 3625103, at *40 ("[T]o the extent that plaintiff has failed to assert that he worked the requisite number of hours to qualify for FMLA leave, he has failed to meet the pleading requirements for FMLA eligibility."); *Roff v. Low Surgical & Med. Supply, Inc.*, No. 03-CV-3655, 2004 WL 5544995, at *8 (E.D.N.Y. May 11, 2004) ("Although the factual allegations contained in plaintiff's complaint suggest that she was a full time employee of defendant since September 2000, they are insufficient to establish that she actually performed at least 1,250 hours of service during the twelve month period immediately preceding her requested leave, as required by [the] FMLA.").

Because Plaintiff has not established eligibility for FMLA, she cannot assert an FMLA claim. *See Bulmer v. Yellow Freight Sys., Inc.*, 213 F.3d 625, 625 (2d Cir. 2000) (holding that "eligibility is a threshold issue" in considering FMLA interference claims); *see also Donnelly*, 691 F.3d at 141 (discussing whether plaintiff worked enough hours to be eligible for leave in FMLA retaliation case); *Bernadotte*, 2014 WL 808013 at *3 (same). The Court therefore dismisses Plaintiff's FMLA claims without prejudice.

### d. Section 1983 claim against the City of New York

Plaintiff argues that the NYPD harassed her, passed her over for promotional opportunities, created a hostile work environment, and discriminated against her because of her race. (Pl. Opp'n 3.)

Defendant argues that Plaintiff fails to state a section 1983 claim because she "fails to plausibly show that the City of New York had an actionable municipal policy or custom which enabled intentional racial discrimination." (Def. Mem. 19.) Defendant further argues that Plaintiff does not allege that any of the complained of actions were "due to an official or unofficial policy orchestrated by officials at the NYPD, and therefore conducted with intent to discriminate." (*Id.* at 19–20.)

A municipality, like the City of New York, can be liable under section 1983 only if a plaintiff can demonstrate "(1) an official [municipal] policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) ). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

**\*23** Plaintiff does not allege any unconstitutional policy or custom attributable to the City that would confer municipal liability. (*See* Am. Compl.) Neither the Amended Complaint nor the opposition papers articulate any basis for municipal liability. Accordingly, the Court dismisses Plaintiff's section 1983 claim against the City

Arroyo-Horne v. City of New York, Slip Copy (2018)

of New York with prejudice.

### e. Leave to amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a second amended complaint within thirty (30) days of this Memorandum and Order. Any further amended complaint should include copies of any and all complaints or charges Plaintiff has filed with the EEOC, the NYSDHR, or the NYPD. Plaintiff is also required to specify to the best of her ability the approximate dates on which she made each complaint or charge and the date of the unlawful conduct the complaint or charge alleges. In addition, Plaintiff should include in a second amended complaint an explanation as to how each allegedly adverse employment action taken by Defendant against Plaintiff resulted in a materially adverse change in the terms and conditions of her employment. As to her discrimination claim, Plaintiff should include factual circumstances that Plaintiff believes demonstrate discrimination. As to her allegations that she was treated differently from her co-workers, Plaintiff must specify the race of her co-workers and any facts supporting her claim that they were treated more favorably. With respect to Plaintiff's retaliation claim, Plaintiff's second amended complaint should include information concerning when and how she notified Defendant of any of her protected activities and how those activities caused the adverse employment action. Plaintiff's second amended complaint should also include information concerning Defendant's knowledge of any of Plaintiff's protected activities and how those activities are causally connected to an alleged adverse employment action. An amended FMLA claim must state Plaintiff's eligibility for FMLA leave including the number of hours Plaintiff worked in the twelve-month period preceding her claim.

A second amended complaint completely replaces the prior complaints filed in this action and must be captioned "Second Amended Complaint" and bear the same docket number as this Memorandum and Order. Plaintiff must succinctly state, in the second amended complaint, all of her claims against each of the defendants whom she believes directly violated her rights, and do so in accordance with the instructions noted above. Because the Court dismisses Plaintiff's section 1983 claim with prejudice, Plaintiff cannot replead this claim.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's racial discrimination, retaliation, hostile work environment, and FMLA claims without prejudice. The Court also dismisses Plaintiff's section 1983 claim with prejudice. If Plaintiff fails to file a second amended complaint within thirty (30) days, the Court will enter judgment dismissing this action for the reasons set forth above. All further proceedings shall be stayed for thirty (30) days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**\*24** SO ORDERED.

### All Citations

Slip Copy, 2018 WL 4259866

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:18-cv-00870-BKS-ATB   Document 19   Filed 02/14/19   Page 30 of 37

Lawtone-Bowles v. City of New York, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 335,783

2017 WL 4250513
United States District Court, S.D. New York.

Nicole LAWTONE-BOWLES, et al., Plaintiffs,
v.
The CITY OF NEW YORK, Defendant.

16-CV-4240 (AJN)
|
Signed 09/22/2017

**Attorneys and Law Firms**

David William Ricksecker, Gregory Keith McGillivary, Hillary LeBeau, Gregory Keith McGillivary, Woodley & McGillivary LLP, Washington, DC, Hope Allison Pordy, Spivak Lipton LLP, New York, NY, for Plaintiffs.

Aliza Jordana Balog, New York City Law Department, New York, NY, for Defendant.

MEMORANDUM & ORDER

ALISON J. NATHAN, United States District Judge

**\*1** Plaintiffs, six Motor Vehicle Operators ("MVOs") employed by the New York City Department of Homeless Services ("DHS"), brought an action on behalf of themselves and all others similarly situated alleging that Defendant City of New York failed to comply with various provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"). First Amended Complaint ("Am. Compl."), Dkt. No. 14. Specifically, Plaintiffs allege that the City failed to properly compensate them for overtime, incorrectly calculated their rate of overtime pay, and failed to pay overtime in a timely manner. Id. Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint in its entirety for failure to state a claim. Defendant's Memorandum of Law in Support of Its Motion to Dismiss the First Amended Complaint ("Br."), Dkt. No. 18.

For the following reasons, the Court GRANTS in part and DENIES in part the motion to dismiss.

**I. Background**

On a Rule 12(b)(6) motion, a court must take the facts alleged in the complaint as true and draw all reasonable inferences in plaintiffs' favor. See N.Y. Life Ins. Co. v. United States, 724 F.3d 256, 261 (2d Cir. 2013). Accordingly, the following statement of facts is drawn from the Amended Complaint.

Plaintiffs are, and at all material times have been, employed as MVOs by DHS. Am. Compl. ¶ 4. Named Plaintiffs Nicole Lawtone-Bowles, Ramzan Alli, Gib Brown, Lance Predmore, Dennis Tobin, and Charles Smith all worked at DHS's Prevention Assistance and Temporary Housing (PATH) center in the Bronx, and they bring the action on behalf of all MVOs who work or have worked for DHS at the material times. Id. ¶ 7. MVOs transport homeless individuals and families to temporary housing placements, train stations and airports, and transport DHS employees between DHS facilities, among other duties. Id. ¶ 9. MVOs are generally scheduled for 5 shifts of 8 hours and 30 minutes each week, of which 30 minutes each day is automatically deducted for uncompensated meal period; thus, Plaintiffs are scheduled to work 40 hours per week. Id. ¶ 10.

According to the Amended Complaint, the City's approach to compensating MVOs for overtime violates the FLSA in three ways.

First, Plaintiffs plead that MVOs frequently work uncompensated overtime hours. Plaintiffs "frequently work overtime on their scheduled work days and weekends" because they "frequently work through the unpaid meal periods without compensation," and "frequently work additional hours before the official start time and after the official end time of their regularly scheduled shifts," causing them to "work in excess of 40 hours in each week that they perform off-the-clock duties." Id. Plaintiffs allege that they "regularly work these additional uncompensated hours in workweeks in which they work over 40 hours." Id. The Amended Complaint goes on to plead more specifics about uncompensated overtime, which the Court addresses below. Id. ¶¶ 11-19, 25-29.

**\*2** Second, Plaintiffs allege a miscalculation of the rate of MVOs' overtime pay. When MVOs work the "night shift," they are entitled to receive "night shift differential pay" equal to ten percent of their basic rate of pay, but Defendant fails to include this in the regular rate of pay

Lawtone-Bowles v. City of New York, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 335,783

when calculating overtime. *Id.* ¶ 20. The Amended Complaint goes on to plead more specifics about improperly calculated overtime rates, which the Court addresses below. *Id.* ¶¶ 20, 31-36.

Third, Plaintiffs claim that when they are paid overtime compensation in cash, Defendant improperly delays the payment beyond the next pay period. *Id.* ¶ 22. The Amended Complaint goes on to plead more specifics about delayed overtime payment, which the Court addresses below. *Id.* ¶¶ 23, 38-42.

Plaintiffs seek to recover liquidated damages equal to their unpaid compensation, interest on their unpaid compensation, attorney's fees and costs, and declaratory judgment. *Id.* at 17.

## II. Discussion

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679)

While allegations made upon information and belief satisfy the pleading standards, especially when "facts are peculiarly within the possession and control of the defendant," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), that the defendant possesses the exact records does not allow plaintiffs to shirk their pleading obligations. *Angiulo v. Cty. of Westchester*, No. 11-CV-7823(CS), 2012 WL 5278523, at *3, n. 4 (S.D.N.Y. Oct. 25, 2012).

### A. Uncompensated Overtime

The FLSA requires that "for a workweek longer than forty hours," an employee who works in "excess of forty hours" shall be paid for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Therefore, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

Defendant analyzes Plaintiffs' claims of uncompensated overtime using two separate groups of Plaintiffs. The complaint pleads more detail in relation to one group than the other. The Court addresses each in turn.

### 1. Plaintiffs Lawtone-Bowles, Alli, Smith, and Brown

Defendants argue that Plaintiffs fail to plausibly plead a FLSA overtime claim with respect to four of the named Plaintiffs—Lawtone-Bowles, Alli, Smith, and Brown. Br. at 12. For all named plaintiffs, and for those similarly situated, Plaintiffs plead that they are scheduled for five shifts of 8 hours and 30 minutes each week, for which 30 minutes is uncompensated meal time. Am. Compl. ¶ 10. Plaintiffs therefore are scheduled to perform a minimum of 40 hours of work per week. *Id.* The overtime work arises, according to the complaint, when Plaintiffs "frequently" work through their unpaid meal periods and "frequently" work additional time before the official start and end of their scheduled shifts. *Id.* Plaintiffs "regularly work these additional uncompensated hours in workweeks in which they work over 40 hours." *Id.*

*\*3* As to the pre-shift work, all plaintiffs are more specifically alleged to "begin work 10 minutes to 30 minutes before the official start time of their shifts and perform pre-shift activities, including but not limited to the [usual tasks discussed above] as well as preparing for their shift by retrieving equipment and vehicle keys, walking to the parking garage to retrieve the vehicle, cleaning the vehicle and taking the vehicle for repairs, for which they are not properly compensated." *Id.* ¶ 11.

Uncompensated post-shift work activities occur "approximately 2 to 4 times a week" and include MVOs' normal tasks "as well as transporting families and individuals, solving problems with placement sites, helping families unload their luggage, driving through

Lawtone-Bowles v. City of New York, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 335,783

heavy traffic, refilling the vehicle's fuel tank, cleaning the vehicle, returning the vehicle to the parking garage, finalizing trip sheets and submitting receipts." *Id.*

Plaintiffs provide that they work through their 30-minute meal periods "approximately 2 to 4 times a week, performing the [usual tasks discussed above] for which they are not compensated, such as transporting families and individuals to various locations." *Id.*

The Complaint then proceeds to give specific examples as to the four above-named plaintiffs. For Lawtone-Bowles, she "arrives and begins working approximately 30 minutes before the start of every shift," preparing by "retrieving equipment for her work vehicle, retrieving the work vehicle keys, walking to the parking garage to pick up her work vehicle, cleaning the vehicle and filling it with gas." *Id.* ¶ 12. She also works after the end of her shift "approximately 2 to 3 times a week for approximately 30 to 90 minutes," as she is still "transporting families and individuals to placement sites." *Id.* This may be caused by "traffic," a "problem with the placement site," or if "the family has a lot of luggage to unload." *Id.* After her shifts, Lawtone-Bowles also "refills the vehicle's fuel tank, cleans the vehicle, returns the vehicle to the parking garage and walks 2.5 blocks from the garage to PATH." *Id.* At PATH, "she organizes receipts and finalizes her trip log before she clocks out." *Id.* Plaintiffs continue that these tasks cause her to work in excess of 40 hours per week without compensation, and offer two specific weeks—February 2, 2014 to February 8, 2014 and December 27, 2015 to January 2, 2016—in which she worked more than 40 hours while not being compensated for 2 hours and 1.5 hours of overtime respectively. *Id.* Moreover, the Complaint alleges that during these weeks in which she performed "off-the-clock duties," she also worked during her meal periods without compensation. *Id.*

Similar claims are made for the other three: Alli, Smith, and Brown. *See id.* ¶¶ 13-15. For example, Alli begins working "approximately 15 to 30 minutes before the start of his shift approximately 3 times a week," doing similar tasks to Lawtone-Bowles. *Id.* ¶ 13. Two specific weeks—May 3, 2015 to May 9, 2015 and June 7, 2015 to June 13, 2015—are referenced as times in which Alli was not compensated for the entirety of his overtime. *Id.* For Plaintiff Brown, the Complaint does not specify on which days he is normally scheduled for shifts, *id.* ¶ 15, but given the earlier statement that "MVOs are scheduled for 5 shifts," *id.* ¶ 10, this is not fatal to Brown's claim.

Defendant argues that these allegations are insufficient to state a claim, dismissing the claims that each plaintiff

"routinely" works in excess of 40 hours per week as a "boilerplate" allegation. Br. at 12. When it comes to the eight specific weeks mentioned (two for each plaintiff), Defendant objects that the pleadings "do not allege what tasks were performed that led to this uncompensated work, when such tasks were performed (i.e., before or after a plaintiff's shift), or with what frequency plaintiffs performed these tasks leading them to work uncompensated time." *Id.* at 13. Moreover, Defendant attempts to turn the allegations around on these plaintiffs, as the specific allegations suggest that they *were* compensated for much of their overtime, and argues that the "failure to plead any facts explaining what plaintiffs were doing that was uncompensated is fatal to their claims." *Id.* at 13-14.

**\*4** The cases relied upon by Defendant do not support its position. Take *Lundy* for example, a Second Circuit case upon which both parties rely extensively. 711 F.3d at 106. In *Lundy*, the Court held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id.* at 114. Plaintiffs have done so here with respect to each of these four individuals. Am. Compl. ¶¶ 10, 12-17. The *Lundy* plaintiffs did not regularly work 40 hours a week, and so their failure to allege that their uncompensated time put them over the 40-hour mark in any given week was fatal. *Id.* at 114-15. That is not the case here.

Other recent Second Circuit cases also rely upon markedly different facts in affirming a district court's dismissal of a FLSA overtime claim. In *Nakahata v. New York-Presbyterian Healthcare System*, the Second Circuit held that "[t]o plead a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." 723 F.3d 192, 201 (2d Cir. 2013). Plaintiffs here have done so directly, providing details about the length, frequency, and nature of their pre-shift, post-shift, and lunch-time activities, on top of allegations that Plaintiffs were scheduled to work forty hours a week. Am. Compl. ¶¶ 10-17. By contrast, in *Nakahata*, Plaintiffs had not alleged that they were scheduled to work forty hours such that their additional tasks would yield a work week above forty hours. 723 F.3d at 201. And in *Dejesus*, the Circuit elaborated on *Lundy's* requirement that a plaintiff "allege overtime without compensation in a 'given' workweek," and said that "[w]hile this Court has not required plaintiffs to keep careful records and plead their hours with mathematical precision," they are required to draw on their memory and experience to provide complaints with "sufficiently developed factual

Lawtone-Bowles v. City of New York, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 335,783

allegations." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013); *see Bustillos v. Academy Bus, LLC*, No. 13-CV-565(AJN), 2014 WL 116012, at *3 (S.D.N.Y. Jan. 13, 2014). Again, this describes what Plaintiffs have done. Am. Compl. ¶¶ 10-17; *cf. DeJesus*, 726 F.3d at 89 (finding that "Dejesus provided less factual specificity that did the plaintiffs in *Lundy* or *Nakahata*").

### 2. Plaintiffs Predmore and Tobin

The only difference in how Predmore's and Tobin's claims are pled from the other four named plaintiffs is in the lack of any specific week cited as one in which Predmore or Tobin worked more than 40 hours. Am. Compl. ¶¶ 16-17. Instead, with respect to their claims, Plaintiffs rely on more generalized statements of approximation. Consequently, Defendant's arguments for dismissal are stronger here.[1]

[1]  While paragraph 10 of the complaint alleges that Plaintiff Tobin works five shifts a week like all other MVOs, paragraph 17 only lists four shifts. Am. Compl. ¶ 10, 17. Plaintiffs offer a correction in their briefing opposing this motion, clarifying that Mr. Tobin does work five shifts. Plaintiffs' Opposition to Defendant's Motion to Dismiss at 18, n. 2. The Court will excuse the inconsistency.

For Predmore and Tobin, in addition to the generalized claims made with respect to all six named plaintiffs, Plaintiffs offer certain specifics. The Amended Complaint alleges that Predmore arrives "approximately 20 to 30 minutes before the start of his shift and performs pre-shift activities," including "checking emails, filling the vehicle's fuel tank, cleaning the vehicle[,] taking the vehicle for repairs, and transporting families and individuals to and from placement sites, airports and train stations." *Id.* ¶ 16. When he performs these activities, as well as when he "performed work activities identified above during his meal periods," it causes him "to work in excess of 40 hours per week, for which he is not compensated." *Id.* The specifics offered for Plaintiff Tobin are similar in form and substance. *Id.* ¶ 17.

**\*5** Defendant compares the allegations for Predmore and Tobin to the plaintiffs in a series of cases in which dismissal was granted. Br. at 9. But the cases Defendant cites are factually distinct in material ways.

In *Cromwell v. New York City Health & Hospitals*

*Corporation*, the plaintiff was regularly scheduled to work 37.5 hours per week, meaning that any alleged "uncompensated work" did not necessarily push him over the 40 hour mark to allege uncompensated overtime. No. 12-CV-4251 (PAE), 2013 WL 2099252 (S.D.N.Y. May 15, 2013). This is a fatal deficiency because, "[s]o long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week." *Lundy*, 711 F.3d at 116. The same exact deficiency is present in *Lundy*, as the plaintiffs, who all worked regular shifts of under 40 hours a week, did not make allegations sufficient to connect the dots between their uncompensated tasks and the weeks in which they allegedly worked more than 40 hours. *Id.* at 114. In *Ramos*, this same deficiency is present, as the complaint fails to allege that "any single plaintiff engaged in such ['off the clock'] activities during a week that he or she worked more than 40 hours, or that these activities resulted in a single plaintiff working more than 40 hours in a week." *Ramos v. City of N. Y. Fire Dept.*, No. 13-CV-9225(KBF), 2014 WL 2111687, at *5 (S.D.N.Y. May 9, 2014). For Predmore and Tobin, who normally work 40 hours a week, any additional work they perform is overtime by definition.

In *Walz*, Judge McMahon granted the motion to dismiss because the plaintiffs did not provide "an estimate of how often they worked overtime or for how many hours, nor do they provide the time frame for when these unpaid hours were earned." *Walz v. 44&X Inc.*, No. 12-CV-5800(CM), 2012 LEXIS 161382, at *12 (S.D.N.Y. Nov. 7, 2012). She continues, "[e]ven stating 'most weeks during the entire course of my employment, I worked at least two hours later than my shift, plus a two-hour meeting every day' would be enough detail for this Court." *Id.* Predmore and Tobin meet this minimal standard.

In *Bustillos*, the deficiency is of a slightly different variety, but one inapposite to the present case nonetheless. *Bustillos v. Academy Bus, LLC*, No. 13-CV-565(AJN), 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014). The plaintiff's bare allegation that he would "regularly work 60 to 90 hours per week," absent any factual allegations that gave context to his claim, was insufficient to move plaintiff's claim from speculative and conclusory to plausible. *Id.* at *3. Here, however, Predmore and Tobin add context that helps explain why they worked more than forty hours in a week. Am. Compl. ¶¶ 16-17.

As Judge Forrest explains in *Ramos*, "Put simply, plaintiffs must allege *both* that they actually performed work for 40 hours in a week, and then work of some

Lawtone-Bowles v. City of New York, Not Reported in Fed. Supp. (2017)

2017 Wage & Hour Cas.2d (BNA) 335,783

amount over 40 hours for which they were not compensated." 2014 WL 2111687, at *3 (emphasis in original). The failure of Predmore and Tobin to cite a specific week is not fatal when their baseline workweek is already 40 hours. The Court finds that all Plaintiffs adequately state a claim for uncompensated overtime.

## B. Other Claims

### 1. Failure to Apply Differential Rate to Overtime

**\*6** Defendant argues that Plaintiffs do not plausibly plead their claim that Defendant miscalculated plaintiffs' overtime pay by failing to include the night shift differential. In addition to Plaintiffs' general allegations as to their overtime work and entitlement to the rate, their Amended Complaint also provides reference to specific weeks during which four of the six named plaintiffs (all but Alli and Predmore) should have, but did not, receive this differential rate applied to their overtime compensation. Am. Compl. ¶ 21.

Section 207(e) of the FLSA, pursuant to regulations promulgated by the Department of Labor, 29 CFR Part 778, *et seq.*, requires that all forms of remuneration be included in the rate at which overtime is paid. The collective bargaining agreement between the City of New York and plaintiffs' union specifies that plaintiffs should receive a ten percent shift differential for all scheduled hours worked between 6 P.M. and 8 A.M. with more than one hour of work between 6 P.M. and 8 A.M. *See* Declaration of Aliza Balog, Exhibit A ("Collective Bargaining Agreement"), Art. III, Sec. 1. Plaintiffs allege that the "failure to include night shift differential pay in plaintiffs' regular rates means that when plaintiffs receive paid overtime for working over 40 hours a week, they are paid at a rate that is below the rate mandated by the FLSA." Am. Compl. ¶ 33.

Defendant argues that plaintiffs fail to plausibly plead this claim in a number of ways. First, the City reiterates its argument that plaintiffs have not sufficiently pled that they worked more than 40 hours in a given workweek such that the requirement that the night shift differential be included in the calculation of overtime takes effect. Br. at 15. As discussed above, the Court rejects this argument, as Plaintiffs plead sufficient facts, drawing inferences in their favor, to establish that they work over 40 hours in a

work week at various times.

Defendant lodges other criticisms, including that plaintiffs have not "pled that their regular rate includes them working hours between 6 P.M. and 8 A.M.," that they have not alleged that "they worked at least a full hour between 6 P.M. and 8 A.M.... so as to qualify for the night shift differential," and that some plaintiffs have not alleged "what tasks they were performing that caused them to work between 6 P.M. and 8 A.M., given that their alleged regular shifts end before 6 P.M." *Id.*

While Defendant makes various factual errors,[2] these criticisms are valid as to certain named plaintiffs. Plaintiffs Lawtone-Bowles, Smith, and Brown are asserted to have regular schedules in which their entire shifts fall within the night shift window of time. Am. Compl. ¶¶ 12, 14, 15. Additionally, Tobin, whose shifts normally run mostly during the daytime, is specifically alleged to have worked "5 shifts between the hours of 6:00 PM to 8:00AM," during the week of January 11, 2015 to January 17, 2015, "for which defendant failed to include the night shift differential when calculating the regular rate for overtime payments." *Id.* ¶ 21. Thus, drawing inferences in favor of the plaintiffs, if an individual's normal schedule has him or her working 40 hours a week at night, it stands to reason that any overtime should be compensated with the inclusion of the ten percent shift differential.

[2]   *Compare* Br. at 15 (alleging Plaintiff Smith works only four shifts, and that plaintiffs do not plead that they regularly work a night shift) *with* Am. Compl. ¶¶ 12, 14-15.

By contrast, there are no factual allegations specific to Plaintiffs Alli and Predmore establishing that they ever worked hours entitling them to night shift differential pay. For this reason, there is little question that the complaint does not adequately plead this claim for those plaintiffs, and any claims brought on these grounds with respect to Plaintiffs Alli and Predmore are dismissed.

### 2. Improper Delay in Overtime Payment

**\*7** Finally, Plaintiffs allege that when they are paid for overtime compensation in cash, "defendant delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours," in violation of 29 USC § 207(a) and 29 CFR § 778.106.

*Id.* ¶ 22. The FLSA allows for delays "reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 CFR § 778.106. But Plaintiffs allege that the delays are due, in actuality, to "a failure by management personnel to approve overtime payments or management's withholding of such payments until the next budgetary quarter." Am. Compl. ¶ 38. Plaintiffs offer two specific instances, related to Brown and Lawtone-Bowles, to supplement an otherwise conclusory allegation. *Id.* ¶ 23.

Defendant moves to dismiss this claim on two related grounds. First, as the prompt payment requirement only applies to overtime, if, as Defendant argues, Plaintiffs did not plead more than 40 hours of work in a given workweek, this claim would fall. Br. at 16. Given the above discussion regarding overtime, the Court finds that this was sufficiently pleaded. Second, Defendant argues that Plaintiffs' failure to allege that the specific instances cited were during weeks of more than 40 hours of work is a fatal omission. *Id.* The Court, drawing inferences in plaintiffs' favor, finds that the use of the word "overtime" within this context implies that the plaintiffs worked more than 40 hours in a given workweek, triggering the application of this provision of the FLSA.

However, Defendant, in its reply brief, also points to a difference between two groups of plaintiffs in how their claims are pleaded, highlighting a flaw similar to that discussed above with respect to the shift differential claims. While Plaintiffs point to specific weeks of overtime for Brown and Lawtone-Bowles that were not timely paid, Am. Compl. ¶ 23, in the absence of similarly specific allegations for the other four named plaintiffs, their claims remain purely conclusory. Reply at 9 ("[C]laims as to two plaintiffs are not sufficient to plead plausible claims as to all plaintiffs."). Simply stating that

an unlawful thing occurred is insufficient.[3] The Court grants the motion to dismiss on Count III for Plaintiffs Alli, Smith, Predmore, and Tobin.

[3]      The few additions to the Amended Complaint in this case that Plaintiffs' counsel made when compared to the Complaint in *Campbell v. City of New York*, are not enough to save these claims. *See* No. 16-CV-8719 (AJN), 2017 WL 3206332 (S.D.N.Y. July 25, 2017).

### III. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the City's motion to dismiss. The Court DENIES the motion to dismiss Count I (failure to pay overtime) in its entirety. Count II (failure to properly calculate overtime regular rate of pay) is dismissed as to Plaintiffs Alli and Predmore. Count III (untimely payment of overtime) is dismissed as to Plaintiffs Alli, Smith, Predmore, and Tobin.

An initial pretrial conference shall be scheduled in a separate order.

This resolves Docket Number 17.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2017 WL 4250513, 2017 Wage & Hour Cas.2d (BNA) 335,783

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 33117155
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jose RIVERA, Plaintiff,
v.
Glenn S. GOORD, Commissioner, Department of
Correctional Services; Peter J. Lacy,
Superintendent, Bare Hill Correctional Facility;
Donald Selsky, Director, Special Housing
Department of Correctional Services; T. Rocque,
Sergeant; R. Harvey; P. Gonyea, Lieutenant; G.
Coryea, Correctional Officer; D. Walton,
Correctional Officer; Lynn Stevenson, R.N., Prison
Nurse; and John Doe, John Does # 1 thru 4,
Defendants.

No. 97–CV–308 LEK/DNH.
|
Sept. 14, 1999.

**Attorneys and Law Firms**

Jose Rivera, Comstock, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Litigation Bureau, Albany, NY, for Defendants.

*DECISION AND ORDER*

KAHN, J.

**\*1** This complaint was dismissed against Defendants
Goord, Lacy and Selsky by order of the Court on 10 July
1998, on the basis of a Report–Recommendation filed on
19 March 1998 by the Honorable David N. Hurd,
Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c) of the Northern District of New York.

The Court hereby dismisses this complaint against all

Defendants, pursuant to Local Rule 41.2(a) and (b),
because the Plaintiff failed to respond to notice of a
dismissal hearing, and failed to notify the Court of his
change of address. The Court served notice on 15 July
1999 for hearing on a dismissal calendar, and set the
hearing date for 3 September 1999. The Plaintiff failed to
"serve and file a certificate setting forth the status of the
action" by a date at least "ten (10) days prior to the
noticed hearing date." Local Rule 41.2(a). Because the
Plaintiff has "fail[ed] to respond as required by this Rule,
the [Court] shall issue a written order dismissing the case
for failure to prosecute." *Id.*

Furthermore, the Plaintiff has failed to notify the Clerk of
the Court and the other parties to the action of his change
of address in accordance with Local Rule 10.1(b). The
Court received notice from the Watertown Correctional
Facility, dated 24 July 1998, that the Plaintiff was absent
from the facility, and might not return in the immediate
future. The docket history for this complaint also records
that Plaintiff Jose Rivera, 95–A–2563, was paroled from
Cayuga Correctional Facility as of 26 April 1999.
Following the Court's 15 July 1999 Scheduling Notice,
setting a Dismissal Calendar Call for 9:30 a.m. on 3
September 1999 before the Court in Albany, New York,
mail sent to the Plaintiff, at Great Meadow Correctional
Facility Box 51, Comstock N.Y. 12821, serving notice of
the Dismissal Calendar Call, was returned undeliverable.
The Plaintiff's failure to submit notification of his change
off address constitutes independent ground for dismissal
of this complaint. Local Rule 41.2(b).

Accordingly, it is

ORDERED that the complaint is DISMISSED against all
Defendants; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 33117155

   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Rivera v. Goord, Not Reported in F.Supp.2d (1999)